IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SHARON MCGARVEY, et al., | : | HON. JEROME B. SIMANDLE |
| Plaintiffs, | : | Civil No. 08-5610 (JBS/AMD) |
| v. | : | |
| PENSKE AUTOMOTIVE GROUP, INC., et al., | : | **OPINION** |
| Defendants. | : | |

APPEARANCES:

Simon B. Paris, Esq.
SALTZ, MONGELUZZI, BARRETT & BENDESKY, PC
One Liberty Place
1650 Market Street
52nd Floor
Philadelphia, PA 19103
    Attorney for Plaintiffs

Mary E. Kohart, Esq.
DRINKER BIDDLE & REATH
105 College Road East
Suite 300
Princeton, NJ 08542-0627
    Attorney for Defendants Penske Automotive Group, Inc.;
    United Autocare Products, Inc.; and United Autocare, Inc.

Keith D. Heinold, Esq.
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, PC
1845 Walnut Street
18th Floor
Philadelphia, PA 19103-4797
    -and-
Kevin M. McKeon, Esq.
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, PC
Woodland Falls Corporate Park
200 Lake Drive East
Suite 300
Cherry Hill, NJ 08002
    Attorneys for Defendant Innovative Aftermarket Systems, L.P.

**SIMANDLE**, District Judge:

## I.   INTRODUCTION

This putative class action centers around the IBEX Anti-Theft Etch System (the "IBEX System"), a product designed to deter automobile theft, which is manufactured and distributed by Defendant Innovative Aftermarket Systems, L.P. ("IAS") and sold by automobile dealerships owned by Defendant Penske Automotive Group, Inc. ("PAG"). Plaintiffs, who purchased IBEX System etches with their automobiles, allege that the limited warranty IAS provides for the IBEX System is unlawful under the Magnuson Moss Warranty Act ("MMWA"), various states' consumer protection laws, and New Jersey common law.

The principal issue presented in this case of first impression is whether Defendants' IBEX System warranty – which essentially provides a discount credit of $2,500 against the purchase price of a replacement vehicle if the consumer's IBEX-protected vehicle is stolen, provided that the consumer purchases the replacement vehicle from the same dealer at a price at least as great as the stolen vehicle's original purchase price – violates the MMWA's anti-tying provision in 15 U.S.C. § 2302(c). A second issue is whether the consumer must sustain actual damages to assert a viable claim for violation of the anti-tying provision under the MMWA at 15 U.S.C. § 2310(d)(1) and under the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act

2

("NJTCCA"), N.J.S.A. 56:12-15.

Presently before the Court are Defendants' motions to dismiss [Docket Items 21 and 22] and Plaintiffs' motion for partial summary judgment [Docket Item 19].  For the reasons set forth below, the Court will grant in part and deny in part Defendants' motions to dismiss, and will grant Plaintiffs' motion for partial summary judgment.

## II.   BACKGROUND

### A.   Facts

Plaintiffs Bryan Bechtel and Katie McGarvey, both New Jersey residents, purchased the IBEX System for $209.00 along with their vehicle from Honda of Turnersville, an automobile dealership owned and operated by Defendant PAG, on June 25, 2005.  (Compl. ¶ 11; Paris Cert. Ex. B at 1.)  Plaintiff Sharon McGarvey, also a New Jersey resident, purchased the IBEX System for $209.00 along with her vehicle from Honda of Turnersville on June 27, 2005. (Compl. ¶ 10; Paris Cert. Ex. A at 1.)

The IBEX System is a product designed to deter automobile theft.  Under the IBEX System, vehicle identification numbers, or "Etch Codes," are permanently etched onto the windows of an automobile using acid that is brushed over stenciled numbers, (Compl. ¶ 17; Hendrix Decl. ¶¶ 4-5); the etching itself is performed by the automobile dealership using materials provided

by IAS.[1]  (Compl. ¶ 1; Hendrix Decl. ¶ 5.)  The IBEX System is
thought to deter theft by making a stolen automobile traceable
using the Etch Code, deterring potential thieves from stripping
car parts due to the fact that the glass contains identifying
features, and "creating suspicion for a party trying to sell an
otherwise-undamaged car that has had all of its etched glass
removed and replaced with non-etched glass."  (Hendrix Decl. ¶
4.)

     Significantly for purposes of this lawsuit, the IBEX System
is sold with a limited warranty (the "Limited Warranty"), under
which purchasers can elect to be covered for a period of between
two and five years.  (Compl. ¶ 19.)  Under the terms of the
Limited Warranty, if the IBEX System fails to perform its
intended function of deterring vehicle theft and the purchaser's
vehicle is stolen and not recovered, then IAS would issue a
credit of between $2,500.00 and $7,500.00 at the dealership from
which the stolen car had been purchased, to be applied toward the
consumer's next automobile purchase.  (Id. at ¶¶ 19-20.)
Specifically, the Limited Warranty provides:

          In the event the Ibex Anti-Theft Etch System fails to
          prevent the Vehicle specified in this Limited Warranty
          from being stolen within the Warranty Period, and such

_____

     [1]  According to the Complaint, PAG applies an Etch Code to
the windows of all of the vehicles it sells, irrespective of
whether the consumer purchases the IBEX System.  (Compl. ¶ 3.)
The consumer does not receive the benefit of the Limited Warranty
without paying $209.00 for the IBEX System.

> failure results in the Customer's primary insurance
> company declaring the Vehicle a Total Loss as a direct
> result of the theft, we will provide the customer with a
> replacement vehicle, by issuing at the dealership listed
> in this Warranty, a credit in the name of the Customer
> (up to _____ $2,500 or _____ $5,000 or _____ $7,500 check
> one) to be applied towards the purchase of the
> replacement vehicle.
>
> The customer is obligated to utilize the total benefit
> provided to replace the Vehicle specified in the Warranty
> and the replacement Vehicle must be of equal or greater
> value than the original purchase price paid for the
> covered Vehicle.

(Compl. ¶ 20; IAS Br. Ex. B at 1) (emphasis omitted).

The warranties purchased by Plaintiffs each specified that "Honda of Turnersville" was the "dealership listed in this Warranty." (Compl. ¶ 23.) For both of the purchases at issue herein, the warranties expressly designated Honda of Turnersville as IAS's "authorized agent" for installing the etch code on the automobiles and selling the IBEX System. (Id. at ¶ 24.) Finally, none of the Plaintiffs in this case alleges that his or her automobile was stolen or otherwise declared to be a total loss pursuant to the Limited Warranty's terms; that is, because Plaintiffs have not had the need to use the warranty, they do not allege that any of the Defendants breached its terms.

## B. Procedural History

Plaintiffs commenced this action on behalf of themselves and others similarly situated on November 14, 2008, naming PAG; United Autocare Products, Inc.; United Autocare, Inc.; and IAS as

Defendants.[2]  They allege that Defendants violated section
2302(c) of the MMWA (Count I), the New Jersey Consumer Fraud Act
("CFA"), N.J.S.A. 56:8-1 et seq. (Count II), the consumer
protection laws of fifteen additional states[3] (Count III), and
the New Jersey Truth-In-Consumer Contract, Warranty and Notice
Act ("NJTCCA"), N.J.S.A. 56:12-15 (Count VI), and also assert
claims for unjust enrichment and rescission (Counts IV and V).
Plaintiffs thereafter filed the motion for partial summary
judgment presently under consideration [Docket Item 19], in which
they seek a determination as a matter of law that the Limited
Warranty violates section 2302(c) of the MMWA, after which
Defendants filed their respective motions to dismiss [Docket
Items 21 and 22].

## III. DISCUSSION

### A.    Standard of Review

In its review of Defendants' motions to dismiss, the Court
must "accept all factual allegations as true, construe the
complaint in the light most favorable to the plaintiff, and
determine whether, under any reasonable reading of the complaint,
the plaintiff may be entitled to relief." Phillips v. County of
Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v.

---

[2]  Jurisdiction for this action is premised upon 28 U.S.C. §
1332(d).  (Compl. ¶ 8.)

[3]  Count III is asserted on behalf of the proposed national
class only.

Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). "In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citation omitted).

The Court's review of Plaintiffs' motion for partial summary judgment is governed by Rule 56, Fed. R. Civ. P.  Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526

U.S. 541, 552 (1999) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986)).

**B.   Analysis**

As the parties recognize, the primary issue to be decided is whether the Limited Warranty creates an unlawful tying arrangement in violation of section 2302(c) of the MMWA.[4]  As the following discussion makes clear, the Court concludes that this question must be answered in the affirmative.  Before it reaches this primary issue, however, the Court explains that while Plaintiffs do not have standing to assert a claim pursuant to the MMWA itself because they have not sustained actual damage, their attack on the allegedly unlawful tying arrangement is viable under the NJTCCA even if Plaintiffs have sustained no actual damage.

1.   <u>MMWA Claim – Failure to Allege Actual Damages</u>

Defendants raise a host of arguments targeting Plaintiffs' MMWA claim, attacking both the substance of the claim (a matter the Court addresses <u>infra</u>) and Plaintiffs' standing to assert a claim pursuant to the MMWA.  As the Court now explains, it agrees with Defendants that because Plaintiffs have not alleged that

---

[4]  Section 2302(c) of the MMWA provides in relevant part that "[n]o warrantor of a consumer product may condition his written or implied warranty of such product on the consumer's using, in connection with such product, any article or service (other than [an] article or service provided without charge under the terms of the warranty) which is identified by brand, trade, or corporate name."  § 2302(c).

they incurred actual damages as a result of Defendants' alleged
MMWA violation, the claim they seek to assert pursuant to the
MMWA itself is unsustainable.

The MMWA is "a remedial statute designed to protect the
purchasers of consumer goods from deceptive warranty practices."
Miller v. Willow Creek Homes, Inc., 249 F.3d 629, 630 (7th Cir.
2001) (citation omitted).  One of the means by which the MMWA
achieves this purpose is by affording a private right of action
to consumers "damaged by the failure of a . . . warrantor . . .
to comply with any obligation under [the MMWA], or under a
written warranty."  15 U.S.C. § 2310(d)(1).  Specifically, the
MMWA provides that consumers so injured may bring suit for legal
and equitable relief in state or federal court,[5] and may, if they
prevail on their claims, recover attorneys' fees and costs.  §§
2310(d)(1)-(2).

In this case, the parties disagree as to whether MMWA
plaintiffs must allege and ultimately prove that they suffered
actual damages in order to bring an MMWA claim.  Plaintiffs

---

[5]  Section 2310(d)(3)(C) of the MMWA requires that in class
actions seeking to assert MMWA claims in federal court, there
must be at least one hundred named plaintiffs.  See 15 U.S.C. §
2310(d)(3)(C).  "However, § 1332(d)(2) of CAFA[, the Class Action
Fairness Act of 2005,] also creates an alternative basis for
federal jurisdiction over . . . [an] MMWA claim."  McCalley v.
Samsung Electronics America, Inc., No. 07-2141, 2008 WL 878402,
at *4 (D.N.J. Mar. 31, 2008) (also explaining that "Congress must
have been aware of MMWA's limited jurisdictional provisions and
intended to expand them with CAFA").

herein do not allege that Defendants breached the terms of the
Limited Warranty.  Defendants argue that without alleging that
they incurred actual damages, Plaintiffs' MMWA claim is
unsustainable; that is, according to Defendants, technical
violations of the MMWA which do not cause the purchaser of the
warranted product to suffer actual damages cannot form the basis
of an MMWA claim.  See Temple v. Fleetwood Enterprises, Inc., 133
Fed. Appx. 254, 268 (6th Cir. 2005).  Plaintiffs argue that
because section 2310(d)(1) is framed in the disjunctive,
providing a cause of action to "a consumer who is damaged by the
failure of a . . . warrantor . . . to comply with any obligation
under this chapter, or under a written warranty," § 2310(d)(1)
(emphasis added), they can prevail on an MMWA claim without
alleging that Defendants breached the warranty and without
alleging actual damages.

    The Court will grant Defendants' motion to dismiss
Plaintiff's MMWA claim.  The majority of the federal courts that
have addressed the matter, as well as all courts within this
Circuit to have considered the question,[6] have held that a

_____

    [6]  Plaintiffs draw the Court's attention to Triad Charters,
Inc. v. Viking Yacht Co., an unpublished decision, wherein a
court in this District stated that "a consumer may bring a suit
against a warrantor for either a violation of the substantive
provisions of the Act or for breach of a written or implied
warranty."  No. 88-4977, 1989 WL 21763, at *2 (D.N.J. Mar. 6,
1989).  While Triad Charters supports the unremarkable point that
a consumer damaged by either a substantive MMWR violation or a
breach of warranty may assert an MMWR claim, id., the case does

plaintiff "is required to show that he has sustained <u>actual</u>
<u>damage</u>, proximately caused by [the defendant's] failure to
[comply] . . . with the MMWA," in order to state an actionable
MMWA claim.  <u>Atchole v. Silver Spring Imports, Inc.</u>, 379 F. Supp.
2d 797, 802 (D. Md. 2005) (emphasis added); <u>see</u> <u>also</u> <u>Temple</u>, 133
Fed. Appx. at 268; <u>Falkenberg v. Alexico Corp.</u>, No. 07-4149,
2008 WL 2478384, at *4 (D.N.J. June 17, 2008); <u>Moroz v. Alexico</u>
<u>Corp.</u>, No. 07-3188, 2008 WL 109090, at *5 (E.D. Pa. Jan. 8,
2008); <u>cf.</u> <u>Kaplan v. Wholesale Automotive Supply Co.</u>, No.
3979-04, 2009 WL 1347404, at *16 (N.J. App. Div. May 15, 2009)
("the MMWA requires more than a showing that the plaintiff paid
for a warranty that was technically illegal under the statute.
Rather, the damage sustained by the plaintiff must flow from the
violation.").

      The Court agrees with these decisions, finding that such a
reading of the MMWA is called for by the language of the
statutory provision creating a private right of action.  That
provision, section 2310(d)(1), provides that "a consumer <u>who is</u>
<u>damaged</u> by the failure of a . . . warrantor . . . to comply with
any obligation under this chapter, or under a written warranty .
. . may bring suit for damages and other legal and equitable
relief."  § 2310(d)(1) (emphasis added).  This language, which

---

not suggest, as Plaintiffs appear to conclude, that a consumer
may prevail on an MMWR claim in the absence of a showing of
actual damages.

expressly provides that a consumer must incur damages as a result of the defendant's MMWA violation in order to state an MMWA claim, stands in contrast with federal statutes that provide a private right of action based upon a defendant's unlawful conduct, irrespective of whether such unlawful conduct has caused the plaintiff to incur actual damages. <u>Compare</u> 15 U.S.C. § 1692k(a) (providing that "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person . . . "), <u>with</u> 15 U.S.C. § 2310(d)(1) (providing that "a consumer who is damaged" by the warrantor's conduct may bring suit).

It is readily apparent that by restricting the class of MMWA plaintiffs to consumers "damaged" by a defendant's MMWA violation, Congress did not intend to afford a right of action to a consumer who merely "paid for a warranty that was technically illegal under the statute." <u>Kaplan</u>, 2009 WL 1347404, at *16; <u>see also</u> <u>Platt v. Union Pac. R.R. Co.</u>, 99 U.S. 48, 58 (1878) ("a legislature is presumed to have used no superfluous words"); <u>Hill v. Kemp</u>, 478 F.3d 1236, 1247 (10th Cir. 2007) ("Congress is presumed to have added these words for some purpose"). Rather, a plaintiff "is required to show that he has sustained actual damage, proximately caused by [the defendant's] failure to [comply] . . . with the MMWA," in order to state a claim under the MMWA, as the majority of federal courts to have considered

the question have concluded.  <u>Atchole</u>, 379 F. Supp. 2d at 802;

<u>Falkenberg</u>, 2008 WL 2478384, at *4; <u>Moroz</u>, 2008 WL 109090, at *5.

Plaintiffs' argument based upon the statute's disjunctive

phrasing does not cast doubt upon this conclusion.  Obviously,

the statute is written in the disjunctive, affording a right of

action for violations of the Act's substantive provisions or for

breaches of warranty.  <u>See</u> 15 U.S.C. § 2310(d)(1).  But the

limitation of such a right of action to a "consumer who is

damaged" by a defendant's conduct clearly applies to each of the

two avenues for recovery – that is, MMWA plaintiffs are limited,

by the statute's terms, to (1) consumers who are damaged by a

defendant's failure to adhere to the Act's substantive

provisions, and to (2) consumers who are damaged by a defendant's

failure to comply with the terms of a warranty.  <u>Id.</u>  Allegations

of actual damages are required to state a claim in either case.[7]

_____

[7]  <u>Kravitz v. Homeowners Warranty Corp.</u>, 542 F. Supp. 317
(E.D. Pa. 1982), cited by Plaintiffs, provides no support for
their position.  <u>Kravitz</u> is presumably cited by Plaintiffs for
its recognition of the disjunctive phrasing of section
2310(d)(1).  The case does not, however, stand for the
proposition that a consumer who has not incurred actual damages
may state an MMWR claim.  To the contrary, the case supports
precisely the opposite conclusion – in <u>Kravitz</u>, while the
warranty at issue was alleged to be inconsistent with the Act's
substantive provisions, the inconsistency that resulted was, in
fact, <u>more</u> consumer-protective than the warranty would otherwise
have been.  542 F. Supp. at 322 ("Indeed, to the extent there is
a variance, it clearly favors the consumer-protection policies of
the Act").  The court in that case held that the plaintiffs had
failed to state an MMWR claim, recognizing that inconsistency
with the MMWR's substantive requirements alone is insufficient to
state an MMWR claim.  <u>Id.</u>

See <u>Atchole</u>, 379 F. Supp. 2d at 802.

Because Plaintiffs have not alleged that they "sustained actual damage, proximately caused by [Defendants'] failure to [comply] . . . with the MMWA," <u>id.</u>, the Court finds that they have failed to state an MMWA claim, and will grant Defendants' motions to dismiss Count I of the Complaint.

    2.   <u>NJTCCA Claim</u>

Although Plaintiffs are thus foreclosed from asserting a claim pursuant to the MMWA itself, the Court concludes, for the reasons discussed below, that their challenge to the allegedly unlawful tying arrangement created by the Limited Warranty is cognizable via the NJTCCA.

        a.   <u>NJTCCA Claim as a Vehicle to Recover for an
             Alleged MMWA Violation</u>

The NJTCCA provides in relevant part:

    No seller, lessor, creditor, lender or bailee shall in
    the course of his business offer to any consumer or
    prospective consumer or enter into any written consumer
    contract or give or display any written consumer
    warranty, notice or sign after the effective date of this
    act which includes any provision that violates any
    clearly established legal right of a consumer or
    responsibility of a seller, lessor, creditor, lender or
    bailee as established by State or Federal law at the time
    the offer is made or the consumer contract is signed or
    the warranty, notice or sign is given or displayed.
    Consumer means any individual who buys, leases, borrows,
    or bails any money, property or service which is
    primarily for personal, family or household purposes . .
    . .

N.J.S.A. 56:12-15.  The Act further provides that "[a]ny person who violates the provisions of this act shall be liable to the

14

aggrieved consumer for a civil penalty of not less than $100.00 or for actual damages, or both at the election of the consumer, together with reasonable attorney's fees and court costs." N.J.S.A. 56:12-17.

In short, as a court in this District recently explained, "the NJTCCA can be violated if a contract or [warranty] simply contains a provision prohibited by state or federal law, and it provides a remedy even if a plaintiff has not suffered any actual damages." Barows v. Chase Manhattan Mortg. Corp., 465 F. Supp. 2d 347, 362 (D.N.J. 2006).  If the Limited Warranty "contains a provision prohibited by [the MMWA]," id., therefore, Defendants may be held liable under the NJTCCA, even if Plaintiffs have not incurred actual damages.

        b.   The Limited Warranty Violates the MMWA's Anti-Tying Provision

Drawing the Court's attention to the Limited Warranty's requirement that the credit for stolen vehicles be issued to "the dealership listed in this Warranty,"[8] (Compl. ¶ 20), Plaintiffs argue that the Warranty violates section 2302(c) of the MMWA (often called the MMWA's "anti-tying provision"), which proscribes warranties of consumer products which condition the warranty upon the consumer's use of a brand-identified product or

---

      [8]  Both warranties purchased by Plaintiffs specified that "Honda of Turnersville" was the "dealership listed in this Warranty."  (Compl. ¶ 23.)

service, unless such products or services are provided free of charge under the warranty.  See 15 U.S.C. § 2302(c).  For the reasons now explained, the Court concludes that the Limited Warranty violates the MMWA's anti-tying provision.

As the Court noted, supra, the MMWA protects consumers by proscribing a variety of deceptive and anti-competitive warranty practices.  See Miller, 249 F.3d at 630.

> Congress passed the MMWA in 1975 in response to an increasing number of consumer complaints regarding the inadequacy of warranties on consumer goods.  See H.R. Rep. No. 93-1107 (1974), reprinted in 1974 U.S.C.C.A.N. 7702, 7705-11.  The purpose of the MMWA is "to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products . . . "  15 U.S.C. § 2302(a) (1994).

Davis v. Southern Energy Homes, Inc., 305 F.3d 1268, 1272 (11th Cir. 2002).  Section 2302(c), one of the MMWA's provisions geared toward preventing anti-competitive warranty practices, proscribes warranties on consumer products which "condition [the] written or implied warranty of such product on the consumer's using, in connection with such product, any article or service (other than [an] article or service provided without charge under the terms of the warranty) which is identified by brand, trade, or corporate name."  § 2302(c); see also 42 Fed. Reg. 36114 (July 13, 1977) (section 2302(c) "prohibits tying arrangements in warranties that effectively restrict the consumer's ability to choose among competing brands or services that can be used in

conjunction with the warranted product").

There is a dearth of caselaw interpreting section 2302(c) – the parties identified no published opinion of any tribunal applying the statute,[9] and the Court's independent research has

--------

[9] Perhaps as a result of the absence of authority interpreting section 2302(c), the parties devote considerable attention to a document submitted by Plaintiffs in support of their summary judgment motion, which Plaintiffs characterize as the opinion of the New Jersey Superior Court, Law Division in the matter of Baldino v. Classic Nissan of Turnersville, and which Defendants characterize as a bench memorandum from "Matt Hill" to "Judge Morgan" in that matter. (Paris Cert. Ex. A at 1.)  In the document, which is difficult to read and which is heavily marked with underlines and handwritten observations, Matt Hill appears to advise Judge Morgan that a warranty identical to that at issue herein "likely violates the anti-tying provisions of the MMWA because the underlying goal of preserving consumer choice is stifled."  (Id. at 6.)  Plaintiffs argue that the document "was adopted, along with its reasoning, as . . . [Judge Morgan's] determination in denying defendants' motion to dismiss in Baldino . . . "  (Pls.' Reply Br. at 9-10.)  In support of this argument, Plaintiffs' attorney, Simon Paris, Esq., states in a sworn certification that he

> spoke to Ann Marie Cohen, New Jersey Superior Court – Law Division, Gloucester County, Civil Division – Team Leader.  Ms. Cohen confirmed with Judge Morgan that the accompanying Memorandum of Law from Matt Hill . . . [was] incorporated into the February 18, 2005 Orders as the Court's basis for those Orders.

(Paris Cert. ¶ 3.)
    The Court will devote less attention to the Baldino document than do the parties herein.  It is quite surprising that a party would urge this Court to place any weight upon a law clerk's bench memo that, by double hearsay, is said to have been adopted by a Superior Court judge, whose order is silent on the matter. Even if the document were characterized as the "basis" for the court's orders – a characterization that is belied by the form and contents of the document, notwithstanding Mr. Paris' Certification – it would amount at most to persuasive authority, "entitled only to that weight that its power to persuade compels."  Seneca-Cayuga Tribe of Oklahoma v. National Indian

17

unearthed only one such case.[10]  Moreover, the legislative history of the provision is, as the Federal Trade Commission ("FTC") has noted, "scanty."  Letter Opinion from Donald S. Clark, Secretary of the FTC, to Keith E. Whann, Esq. (Dec. 31, 2002) (the "Clark Letter Opinion"), available at http://www.ftc.gov/os/2003/01/niadaresponseletter.htm.  However, the FTC has promulgated guidelines for the interpretation of section 2302(c), and has published multiple opinion letters interpreting the MMWA's anti-tying provision, which provide useful guidance in applying section 2302(c) to the Limited Warranty at issue in this matter.  See Madison v. Resources for Human Development, Inc., 233 F.3d 175, 186-87 (3d Cir. 2000) (agency interpretive guidelines, as opposed to formal regulations, are not binding, but are "'entitled to respect'

_____

Gaming Com'n, 327 F.3d 1019, 1043 (10th Cir. 2003).  The persuasive power of the Baldino document is limited – it devotes a perfunctory ten lines to the application of section 2302(c) to the IBEX warranty.  The Court thus does not rely upon that document in rendering its decision herein.

[10]  In re Apple & AT & TM Antitrust Litigation, 596 F. Supp. 2d 1288 (N.D. Cal. 2008), involved a straightforward application of section 2302(c).  In that case, it was alleged that "Apple told customers that Apple will void and refuse to honor the iPhone warranty of any customer who has downloaded competing applications," and that Apple thereafter refused to honor the warranties after the iPhones were damaged.  Id. at 1313 (internal quotations and citations omitted).  The court held that "Plaintiffs' Complaint [] alleges sufficient facts to state a claim under § 2302(c), because it alleges that Apple refused to honor the warranties of customers who used iPhone applications and cellular service not approved by Apple."  Id.

under <u>Skidmore v. Swift</u>, 323 U.S. 134 (1944), but only to the extent they have the 'power to persuade'").[11]  These guidelines, as well as the plain language of section 2302(c) itself, make clear that the Limited Warranty at issue in this case falls within the ambit of the MMWA's anti-tying provision.

The FTC's guidelines provide two examples of warranty provisions that, in the Commission's view, would be prohibited by section 2302(c):

> (b) Under a limited warranty that provides only for replacement of defective parts and no portion of labor charges, section 102(c) prohibits a condition that the consumer use only service (labor) identified by the warrantor to install the replacement parts.  A warrantor or his designated representative may not provide parts under the warranty in a manner which impedes or precludes the choice by the consumer of the person or business to perform necessary labor to install such parts.
>
> (c) No warrantor may condition the continued validity of a warranty on the use of only authorized repair service and/or authorized replacement parts for non-warranty service and maintenance.  For example, provisions such as, "This warranty is void if service is performed by anyone other than an authorized 'ABC' dealer and all replacement parts must be genuine 'ABC' parts," and the like, are prohibited where the service or parts are not covered by the warranty . . . .

16 C.F.R. §§ 700.10(b)-(c); <u>see also</u> H.R. Rep. 93-1107 (1974) ("Under this prohibition, for example, no automobile manufacture[r] may condition his warranty of an automobile on the

---

[11]  The FTC interpretation of section 2302(c) "is not a formal administrative regulation," <u>Madison</u>, 233 F.3d at 186; rather, it "represent[s] the Commission's views on various aspects of the Act."  42 Fed. Reg. 36112-01 (July 13, 1977).

use of a named motor oil or on the use of its own automobile
parts . . . "); In re Apple, 596 F. Supp. 2d at 1313.

By contrast, the FTC has reasoned that a "50/50 warranty,"
under which "the dealer promises to pay 50% of the labor cost and
50% of the cost for parts for repairs covered by the warranty,
with the remainder covered by consumers," would not run afoul of
section 2302(c) if it specified by brand name the facility at
which repairs would have to be performed.  Clark Letter Opinion
at 1.  As the FTC has explained:

> In the case of 50/50 warranties, the warranting dealer
> has a direct interest in providing the warranty service
> for which it is partially financially responsible . . .
> [I]n a 50/50 warranty the warranted repair work is not,
> as a practical matter, severable into two parts: one that
> the warrantor can perform and another part that another
> auto repair shop could perform.  Nor can a warranted part
> be separated into a fractional part provided by the
> warrantor and another fractional part that the consumer
> can purchase elsewhere.

Id. at 2.  In short, section 2302(c) "prohibits [1] tying
arrangements that condition coverage under a written warranty [2]
on the consumer's use of an article or service identified by
brand, trade, or corporate name unless [3] that article or
service is provided without charge to the consumer," 16 C.F.R. §
700.10(a), although an exception may exist in the case of 50/50
warranties for non-severable products and services.  Clark Letter
Opinion at 2.

The Court concludes that each of these three prongs is
satisfied here.  First, the Limited Warranty contains a tying

arrangement that conditions coverage under the warranty.  16
C.F.R. § 700.10(a); 15 U.S.C. § 2302(c).  To "condition,"
Webster's indicates, is (not surprisingly) to "subject to
conditions."  Webster's New Int'l Dictionary 473 (3d ed. 1993).
A "condition," in this context, means "something that limits or
modifies the existence or character of something else."  Id.  The
existence or character of coverage under the Limited Warranty
manifestly is limited by the warranty's terms, which "limit[]"
the availability of the warranty benefits, id., to the
"dealership listed in this Warranty" – in this case, "Honda of
Turnersville."  (Compl. ¶¶ 20, 23.)  In short, Plaintiffs are
compelled under the terms of the Limited Warranty to redeem its
benefits at Honda of Turnersville, or to lose the benefits
altogether; coverage under the warranty plainly is tied to the
dealership listed in the warranty.  Under the plain language of
section 2302(c) and the FTC's interpretive guidelines, the
Limited Warranty contains a tying arrangement which imposes
conditions upon the consumer's coverage.  16 C.F.R. § 700.10(a).

It is likewise readily apparent on the face of the Warranty
that such conditional coverage is tied to "an article or service
identified by brand, trade, or corporate name."  Id.; see also
42 Fed. Reg. 36114 (July 13, 1977) (section 2302(c) "prohibits
tying arrangements in warranties that effectively restrict the
consumer's ability to choose among competing brands or services

21

that can be used in conjunction with the warranted product"). The Limited Warranty specifies that the vehicle credit it provides is only available at the "dealership listed in this Warranty," which, in this case, as the Court has noted, is "Honda of Turnersville."  (Compl. ¶¶ 20, 23.)  Such a specification unquestionably is "identified by brand, trade, or corporate name."  § 2302(c).

Finally, the Court concludes that the brand-identified service specified in the Limited Warranty is not "provided without charge under the terms of the warranty," id., in that consumers must incur charges in redeeming the credit, which, under the terms of the warranty, must be used at a specified dealership for an automobile purchase of "equal or greater value than the original purchase price paid for the covered Vehicle."[12] (Compl. ¶ 20.)  According to Defendants, because "there can be no dispute that IAS does not charge Plaintiffs to provide them with a credit at PAG if their cars are stolen," section 2302(c) of the MMWR is inapplicable to the Limited Warranty because the credit itself is provided "without charge."  (IAS Br. at 11.)

This argument runs contrary to the FTC's interpretive

---

[12]  Plaintiffs expended approximately $13,800 in the original vehicle purchases.  (Paris Cert. Exs. C and D.)  Under the terms of the Limited Warranty, Plaintiffs would be required to expend a minimum of approximately $11,300 at Honda of Turnersville in purchasing a replacement vehicle in order to take advantage of the warranty benefits of $2,500 in the event their vehicle was stolen and deemed a total loss.

guidelines for the MMWR.  In its guidelines, the FTC, reasoning by example, explains that "[a] warrantor or his designated representative may not provide parts under the warranty in a manner which impedes or precludes the choice by the consumer of the person or business to perform necessary labor to install such parts" if the installation fees themselves are not covered under the terms of the warranty.  16 C.F.R. § 700.10(b).  Defendants' reading of section 2302(c)'s "without charge" provision is irreconcilable with 16 C.F.R. § 700.10(b), and suggests a much narrower reading of the anti-tying provision than the FTC has condoned.  That is, under Defendants' narrow approach to section 2302(c), so long as a warrantor does not charge the consumer for delivering the very benefits offered under a limited warranty, the warrantor may impose brand-based restrictions upon the consumer's use of articles or services which are necessary for those warranty benefits to have any value; under the view of section 2302(c) urged by Defendants, a warrantor could in fact "provide parts under the warranty in a manner which impedes or precludes the choice by the consumer of the person or business to perform necessary labor to install such parts," 16 C.F.R. § 700.10(b), so long as the parts themselves are provided "without charge."  15 U.S.C. § 2302(c).

Defendants' reading is inconsistent not only with the long-established guidelines of the FTC, but also with the evident

23

purpose of section 2302(c), which is to eliminate "tying arrangements in warranties that effectively restrict the consumer's ability to choose among competing brands or services that can be used in conjunction with the warranted product."  42 Fed. Reg. 36114 (July 13, 1977).  Because a consumer must incur charges – i.e., the difference between the amount of the warranty credit and the original purchase price of the automobile – when redeeming the warranty benefit under brand-restricted terms, the Court cannot conclude that the brand-restricted "article or service is provided without charge to the consumer."[13]  16 C.F.R. § 700.10(a).  With all three of the above-listed prongs satisfied, the Court concludes that the Limited Warranty at issue herein violates section 2302(c)'s prohibition on tying arrangements.

Defendants' remaining arguments to the contrary are unpersuasive.  Defendants focus most strenuously upon a single sentence in the FTC's 2002 letter opinion, reviewed supra, in

---

[13]  That the benefits under the warranty are not "provided without charge to the consumer," 16 C.F.R. § 700.10(a), is also evidenced by the structure of the warranty benefits.  In the present case, the consumer must incur charges for a replacement vehicle of equal or greater price than the original price paid for the stolen vehicle, even though the stolen vehicle will almost never have retained its value compared with its original purchase price.  In other words, to obtain this warranty benefit, the consumer must pay for a replacement having a cost greater than the present worth of the stolen vehicle which is being replaced.  The warranty credit is of no value unless the consumer is willing to buy a vehicle that is more costly than the present value of the stolen vehicle.

which the FTC opined that 50/50 warranties did not violate section 2302(c).  Clark Letter Opinion at 2.  The sentence in question, which is not elaborated upon in the letter and which is not the focus of the FTC's reasoning, states in passing that "performing the very service promised under the warranty is not 'using' a service 'in connection with' the warranted product."  Id. at 1.  According to Defendants, "[t]he 50/50 Warranty situation is indistinguishable from the Limited Warranty issued in connection with the IBEX," making section 2302(c) inapplicable to the Limited Warranty.  (PAG's Br. at 12.)

     This argument is unconvincing.  There are strong grounds upon which to question the reasoning of the cited sentence.  The reasoning behind the sentence is undeveloped in the Clark Letter Opinion, which focuses instead upon the fact that "[i]n the case of 50/50 warranties, the warranting dealer has a direct interest in providing the warranty service for which it is partially financially responsible."  Clark Letter Opinion at 2.  The sentence in question is likewise inconsistent with the FTC's own long-established interpretive guidelines for section 2302(c).  In the earlier guidelines, which were issued shortly after the MMWA was enacted, the FTC made clear its opinion that a warranty which covers service but not replacement parts cannot require that the consumer use a specified brand of parts without running afoul of section 2302(c).  See 16 C.F.R. §§ 700.10(b)-(c); see also

25

Madison, 233 F.3d at 187 ("agency interpretations issued
contemporaneous with a statute are entitled to greater deference"
than those issued at a later time) (citing Public Citizen v.
Department of Justice, 491 U.S. 440, 463 n.12 (1989)).  If it
were the case that "performing the very service promised under
the warranty is not 'using' a service 'in connection with' the
warranted product," Clark Letter Opinion at 1, and that
performing the warranted service itself did not fall within the
ambit of section 2302(c), then, by extension, a warrantor could
provide such service in a manner that restricts consumer choice
as to the brand of replacement parts selected, contrary to the
FTC's guidelines.  See 16 C.F.R. §§ 700.10(b)-(c).  The Court
finds untenable the notion that the FTC intended to abandon its
long-established guidelines with a single, undeveloped sentence
in a letter opinion, particularly when the prior guidelines were
consistent with the evident purpose of section 2302(c), which is
to eliminate "tying arrangements in warranties that effectively
restrict the consumer's ability to choose among competing brands
or services that can be used in conjunction with the warranted
product."  42 Fed. Reg. 36114 (July 13, 1977).

     Moreover, as the Court noted, supra, the reasoning behind
the FTC's position on 50/50 warranties is that "the warranting
dealer has a direct interest in providing the warranty service
for which it is partially financially responsible . . . . Dealers

26

who pay a proportion of repair costs need some control over the
diagnosis of the repair needed and the quality of the repair."
Clark Letter Opinion at 2.  Far from being indistinguishable from
the Limited Warranty at issue in this case, this reasoning is
inapposite to the present matter.  Defendants have suggested no
"direct [financial] interest" on the part of the warrantor herein
that would be impacted by the brand of the dealership at which
the warranty credit is redeemed, and the need for warrantor
control over the quality of diagnosis and repair has no
application to the terms of the Limited Warranty.  Id.  As the
Clark Letter Opinion itself makes plain, the scope of its
reasoning is "limited to the question of whether section
[2302(c)] prohibits [50/50] . . . warranty terms."  Id.

Finally, the Court will not dwell long on the argument of
Defendant IAS that because the Limited Warranty contains a
"safety valve" provision, under which a consumer who purchases
the IBEX System from a dealership that subsequently closes may
redeem the credit at a different dealership, the Limited Warranty
does not create a tying arrangement.  While such an argument
could conceivably impact the standing of a consumer to whom the
exception applied, it has no bearing upon the facts of this
case.[14]

---

[14]  Defendant IAS suggests that the very existence of a
safety valve, even if it is inapplicable to Plaintiffs,
undermines the viability of Plaintiffs' section 2302(c) claim,

In summary, the Court concludes that the Limited Warranty creates a tying relationship in violation of section 2302(c) of the MMWA.  Defendants' motions to dismiss Plaintiffs' NJTCCA claim, pursuant to which this section 2302(c) challenge may be asserted in the absence of allegations of actual damages, see Barows, 465 F. Supp. 2d at 362, will thus be denied.  There are, moreover, no disputed questions of material fact regarding the legal question as to which Plaintiffs seek partial summary judgment – namely, a determination that the Limited Warranty creates a tying arrangement in violation of section 2302(c) of the MMWA.[15]  The Court will thus grant Plaintiffs' motion for

---

citing cases discussing anti-tying claims brought under the Sherman Anti-Trust Act, 15 U.S.C. § 1 et seq., and the Home Owners Loan Act ("HOLA"), 12 U.S.C. § 1464(q).  See Integon Life Ins. Corp. v. Browning, 989 F.2d 1143 (11th Cir. 1993).  The standard for liability under these Acts is simply inapplicable to section 2302(c) of the MMWA; factors such as whether "the seller possessed sufficient economic power in the tying product market to coerce the buyer's acceptance of the tied product" and whether there is "an anti-competitive effect in the tied product market" have no application whatsoever to the MMWA.  Id. at 1150.  Defendants' reliance upon Integon and similar cases interpreting the Sherman Act and HOLA is thus misplaced.

[15]  Defendant PAG asserts that summary judgment on this question is premature because questions exist as to whether PAG was itself a warrantor within the meaning of the MMWA.  PAG is, of course, correct that it cannot be held liable for violating the MMWA if it was not subject to that Act's requirements.  The entry of summary judgment herein is exclusively on the limited question that is the subject of Plaintiffs' motion – whether the terms of the Limited Warranty violate section 2302(c).  No finding as to PAG's status as a warrantor is made herein, and the parties are free to move for summary judgment on that question once they have had the opportunity to conduct discovery.

partial summary judgment as to this issue.

      3.   <u>New Jersey Consumer Fraud Act Claim and
         "Collective" State Consumer Fraud Statute Claims</u>

Defendants move to dismiss Plaintiffs' claims brought pursuant to the consumer fraud acts of New Jersey and fifteen other states, arguing that Plaintiffs' allegations are insufficient to state a claim.  For the reasons that follow, the Court agrees, and will grant Defendants' motions to dismiss these claims, although such dismissal is without prejudice to file an amended complaint that corrects the deficiencies identified herein within ten (10) days of the entry of the Order accompanying this Opinion.

Plaintiffs' CFA claim turns on their allegation that "[t]he sale of the Ibex by Defendants is an unconscionable commercial practice in violation of N.J.S.A. 56:8-2 because it contains a tying arrangement prohibited by the MMWA."  (Compl. ¶ 68.) According to Plaintiffs, Defendants' unspecified "actions in connection with the promotion, marketing, solicitation, negotiation, administration and sale of the Ibex, as set forth herein, constitute unfair and deceptive acts and practices . . ." (<u>Id.</u> at ¶ 70.)  Notwithstanding the reference to actions "set forth herein," the Complaint is silent as to the details of Defendants' allegedly unconscionable "promotion, marketing, solicitation, negotiation, administration and sale of the Ibex." (<u>Id.</u>)

The CFA prohibits, <u>inter alia</u>, the use of "any unconscionable commercial practice" in the sale of merchandise. N.J.S.A. 56:8-2.  The New Jersey Supreme Court has explained that "[t]he standard of conduct that the term 'unconscionable' implies is lack of good faith, honesty in fact and observance of fair dealing."  <u>Cox v. Sears Roebuck & Co.</u>, 138 N.J. 2, 18 (1994) (some internal quotations and citations omitted).  Thus, with regard to claims related to a warrantor's refusal to honor a warranty, the Court explained that "by providing that a court should treble those damages and should award attorneys' fees and costs, the Legislature must have intended that <u>substantial aggravating circumstances</u> be present in addition to the breach." <u>Id.</u> (emphasis added).  Additionally, courts in this District have recognized that CFA claims targeting allegedly unconscionable commercial conduct "are subject to Rule 9(b)'s heightened pleading standards."  <u>Harper v. LG Electronics USA, Inc.</u>, 595 F. Supp. 2d 486, 491 (D.N.J. 2009) (citing cases); <u>see also</u> <u>Hassler v. Sovereign Bank</u>, No. 08-5800, 2009 WL 1651166, at *3 n.4 (D.N.J. June 12, 2009).

Given that a "defendant's refusal to honor its warranty, offensive though it may be, [does] not rise to the level of [an] unconscionable commercial practice," <u>Harper</u>, 595 F. Supp. 2d at 491 (internal quotations and citations omitted), the Court agrees with Defendants that the sale of a warranty that fails to conform

to the MMWR, without more, does not constitute an unconscionable commercial practice within the meaning of the CFR.  See Cox, 138 N.J. at 18.  Rather, in order to state an actionable CFR claim, Plaintiffs must allege that Defendants acted in bad faith or were otherwise dishonest in order to satisfy the CFA's unconscionable commercial practice requirement.  Id.  Plaintiffs' invocation of Defendants' unspecified "actions in connection with the promotion marketing, solicitation, negotiation, administration and sale of the Ibex," (Compl. ¶ 70), would be insufficient to satisfy this requirement even under Rule 8, Fed. R. Civ. P., and these allegations certainly do not suffice to meet Plaintiffs' more rigorous pleading obligations under Rule 9(b), Fed. R. Civ. P. See Harper, 595 F. Supp. 2d at 491.

Plaintiffs' "collective" state consumer fraud acts claim, asserted in Count III of the Complaint, fares even less well. While Count III suffers from the same deficiencies that undercut the viability of Count II, Plaintiffs do not even set forth the elements of the fifteen causes of action they assert in Count III or explain how the fifteen listed statutes apply to the facts of this case.  As a Court in this District explained under identical circumstances:

> Plaintiff[s] ha[ve] not pled sufficiently this cause of
> action.  As the Supreme Court explained in Twombly,
>
>> [w]hile a complaint attacked by a Rule 12(b)(6)
>> motion to dismiss does not need detailed factual
>> allegations, a plaintiff's obligation to provide

the "grounds" of his "entitlement to relief"
requires more than labels and conclusions, and a
formulaic recitation of the elements of a cause of
action will not do.  Factual allegations must be
enough to raise a right to relief above the
speculative level.

127 S. Ct. at 1964-65 (emphasis in original).  Here,
Plaintiff[s] fail[] to allege even the elements of the
various statutes, or facts permitting this Court to draw
inferences that the elements exist.  Kost v. Kozakewicz,
1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Charles Alan
Wright & Arthur R. Miller, Federal Practice & Procedure
Civil 2d § 1357 at 340) (2d ed. 1990) ("The pleader is
required to 'set forth sufficient information to outline
the elements of his claim or to permit inferences to be
drawn that these elements exist.'")).

McCalley v. Samsung Electronics America, Inc., No. 07-2141, 2008

WL 878402, at *9 (D.N.J. Mar. 31, 2008).

Furthermore, consistent with the requirements for pleading a

multi-state class action arising under state laws, the Complaint

must also identify the proposed class and the common class claims

and issues under the multiple statutes upon which class

certification is sought.  Rule 23(a)(2) requires that plaintiffs

demonstrate that there are questions of law or fact common to the

class, while Rule 23(c)(1)(B) requires that any order certifying

a class action "must define the class and the class claims,

issues or defenses," among other things.  The Complaint must

therefore allege suitable relatedness of legal issues extending

across the multiple state statutes Plaintiffs are choosing to

invoke.  Cf. In re General Motors Corp. Pick-Up Truck Fuel Tank

Products, 55 F.3d 768, 795-96 (3d Cir. 1995) ("Normally, a court

makes the required commonality . . . determination[] by
referencing the original class complaints in order to assure that
the claims alleged by the named plaintiffs are common to the
class . . .") (emphasis added); see also Klay v. Humana, Inc.,
382 F.3d 1241, 1262 (11th Cir. 2004) ("The burden of showing
uniformity or the existence of only a small number of applicable
standards . . . among the laws of the . . . states rests squarely
with the plaintiffs").  The current Complaint in Count III fails
to do so.

        As was the case in McCalley, the mere listing of state
consumer fraud statutes set forth in Count III of the Complaint
is insufficient to state a claim.  Id.  The Court will
accordingly grant Defendants' motions to dismiss Counts II and
III of the Complaint.  Should Plaintiffs seek to file an amended
complaint to correct these deficiencies in their original
pleading, their amended complaint must be filed within ten (10)
days of the entry of the Order accompanying this Opinion.

            4.   Common Law Claims

        Finally, the Court addresses Defendants' motions to dismiss
Plaintiffs' common law claims for unjust enrichment and
rescission.  With regard to Plaintiffs' unjust enrichment claim,
Defendants argue that because a valid contract exists between
Plaintiffs and Defendants, Plaintiffs' unjust enrichment claim
fails.  See VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554

                                    33

(1994) ("The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights") (emphasis added).

Plaintiffs recognize that the existence of a valid and enforceable contract forecloses the viability of an unjust enrichment claim, but argue that the warranties are unenforceable because they contain provisions which violate the MMWR – that is, Plaintiffs dispute the existence of a valid, enforceable contract. (Compl. ¶¶ 83, 91-92) (alleging that the contracts are unenforceable due to illegality). Because Plaintiffs have challenged the validity of the contracts underlying this dispute, see Gamble v. Connolly, 399 N.J. Super. 130, 144 (L. Div. 2007) ("Contracts have been declared invalid because they violate statutes . . . ") (citing cases), the Court concludes that dismissal of their unjust enrichment claim is premature, and will deny Defendants' motions to dismiss Count IV of the Complaint.

Finally, the Court will grant Defendants' motion to dismiss Count V of the Complaint, which asserts a "claim" for rescission. It is well-recognized in New Jersey, as elsewhere, that "rescission refers to a remedy, not a cause of action." Hoke, Inc. v. Cullinet Software, Inc., No. 89-1319, 1992 WL 106784, at *2 (D.N.J. Apr. 28, 1992); Canfield v. Reynolds, 631 F.2d 169,

178 (2d Cir. 1980); <u>Zola v. Gordon</u>, 685 F. Supp. 354, 374
(S.D.N.Y. 1988).  A party to a contract may seek to have the
contract rescinded as a remedy where, for example, the contract
was procured by fraud.  See <u>First American Title Ins. Co. v.
Lawson</u>, 177 N.J. 125, 136-37 (2003).  However, Plaintiffs have
not asserted, <u>e.g.</u>, an equitable fraud claim, <u>see</u> <u>id.</u>, and, as
the Court determined, <u>supra</u>, their statutory consumer fraud
claims fail to state a claim for which relief may be granted.
Because "rescission refers to a remedy, not a cause of action,"
<u>Hoke</u>, 1992 WL 106784, at *2, the Court will grant Defendants'
motions to dismiss Count V of the Complaint.

**IV.  CONCLUSION**

    For the reasons explained above, the Court will grant in
part and deny in part Defendants' motions to dismiss, and will
grant Plaintiffs' motion for partial summary judgment.
Plaintiffs' claims under Count IV (unjust enrichment) and Count
VI (violation of the NJTCCA) may go forward, while Plaintiffs'
claims under Count I (Magnuson Moss Warranty Act), Count II (New
Jersey Consumer Fraud Act), Count III (the consumer protection
laws of fifteen states), and Count V (rescission) are dismissed
without prejudice to Plaintiffs' opportunity to file an Amended
Complaint correcting the deficiencies therein consistent with

this Opinion, within ten (10) days of the entry of the

accompanying Order.   The accompanying Order is entered.


**June 29, 2009**                            **s/ Jerome B. Simandle**
Date                                    JEROME B. SIMANDLE
                                        United States District Judge

36