IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
                                  :
SHARON MCGARVEY, et al.,          :      HON. JEROME B. SIMANDLE
                                  :
              Plaintiffs,         :      Civil No. 08-5610 (JBS/AMD)
                                  :
      v.                          :
                                  :           OPINION
PENSKE AUTOMOTIVE GROUP, INC., :
et al.,                           :
                                  :
              Defendants.         :
                                  :
```

APPEARANCES:

Simon B. Paris, Esq.
Patrick Howard, Esq.
SALTZ, MONGELUZZI, BARRETT & BENDESKY, PC
One Liberty Place
1650 Market Street
52nd Floor
Philadelphia, PA 19103
      Attorneys for Plaintiffs

Daniel Elliot Brewer, Esq.
Mary E. Kohart, Esq.
DRINKER BIDDLE & REATH
105 College Road East
Suite 300
Princeton, NJ 08542-0627
      Attorneys for Defendants Penske Automotive Group, Inc.;
      United Autocare Products, Inc.; and United Autocare, Inc.

Keith D. Heinold, Esq.
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, PC
1845 Walnut Street
18th Floor
Philadelphia, PA 19103-4797
      -and-
Kevin M. McKeon, Esq.
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, PC
Woodland Falls Corporate Park
200 Lake Drive East
Suite 300
Cherry Hill, NJ 08002
      -and-

Paul K. Leary, Jr., Esq.
COZEN O'CONNOR
457 Haddonfield Road
Suite 300
P.O. Box 5459
Cherry Hill, NJ 08002
     Attorneys for Defendant Innovative Aftermarket Systems, L.P.

**SIMANDLE**, District Judge:

## I.  INTRODUCTION

     This matter is before the Court upon a number of
Defendants' motions: (1) a motion filed by Defendant Innovative
Aftermarket Systems ("IAS") and joined by Defendants Penske
Automotive Group, Inc. ("PAG"), United Autocare Products, Inc.
and United Autocare, Inc. ("UAP") for reconsideration or in the
alternative appellate certification of the Court's June 29, 2009
Order [Docket Items 52 & 53]; (2) IAS's motion seeking
retroactive permission to file a reply brief on the motion for
reconsideration [Docket Item 61]; (3) IAS's motion to dismiss the
Amended Complaint [Docket Item 64]; (4) PAG and UAP's motion to
dismiss the Amended Complaint [Docket Item 63]; (5) IAS's motion
to "Confirm Right to Cure Under the MMWA" [Docket Item 82]; and
(6) IAS's motion for partial summary judgment regarding the scope
of Plaintiffs' claims in the Amended Complaint [Docket Item 95].[1]

_____

     [1]  While this motion was only recently filed on March 22,
2010, and the Court has not yet received opposition papers, for
the reasons explained in Part III.B.4 infra, the motion will be
addressed in this Opinion.

## II.   BACKGROUND

This putative class action centers around the IBEX Anti-Theft Etch System, a product designed to deter automobile theft, which is manufactured and distributed by IAS and sold by automobile dealerships owned by PAG.  The IBEX System is sold with a limited warranty.  Under the terms of the warranty, if the IBEX System fails to perform its intended function of deterring vehicle theft and the purchaser's vehicle is stolen and not recovered, then IAS would issue a credit of between $2,500.00 and $7,500.00 at the dealership from which the stolen car had been purchased, to be applied toward the purchase of a replacement vehicle.[2]

None of the Plaintiffs in this case alleges that his or her automobile was stolen or otherwise declared to be a total loss pursuant to the warranty's terms.  Instead, Plaintiffs argue that the terms of the warranty are unlawful and that merely having been a party to such a warranty is sufficient for relief under various consumer protection statutes and the common law.  The original complaint alleged six counts:  violation of the Magnuson

---

[2]   The warranty provides in relevant part:
[If the vehicle is stolen] we will provide the customer with a replacement vehicle, by issuing at the dealership listed in this Warranty, a credit in the name of the Customer (up to ____ $2,500 or ____ $5,000 or ____ $7,500 check one) to be applied towards the purchase of the replacement vehicle.
(Compl. ¶ 20)

3

Moss Warranty Act ("MMWA") 15 U.S.C. § 2302 (Count I), violation
of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1
(Count II), violation of other states' consumer protection laws
(Count III), unjust enrichment (Count IV), rescission (Count V),
and violation of New Jersey's Truth-In-Consumer Contract,
Warranty and Notice Act, N.J. Stat. Ann. § 56:12-15 ("NJTCCA")
(Count VI).  The complaint has since been amended as discussed
below.

On June 29, 2009, this Court decided Defendants' first
motions to dismiss [Docket Items 21 & 22], as well as Plaintiff's
motion for partial summary judgment [Docket Item 19].  The Court
made a number of important determinations.

First, the Court ruled that "because Plaintiffs have not
alleged that they incurred actual damages as a result of
Defendants' alleged MMWA violation, the claim they seek to assert
pursuant to the MMWA itself is unsustainable." [Docket Item 47,
at 8-9].  This is because the MMWA only provides a private right
of action to consumers "damaged by the failure of a . . .
warrantor . . . to comply with any obligation under [the MMWA],
or under a written warranty." 15 U.S.C. § 2310(d)(1).  The Court
concluded that "Congress did not intend to afford a right of
action to a consumer who merely paid for a warranty that was
technically illegal under the statute." [Id. at 12 (citations
omitted).]  The Court therefore dismissed Count I.

4

Second, the Court ruled that the NJTCCA, relied upon in Count VI, provides for a state cause of action when the MMWA has been violated, even if the MMWA does not provide a federal cause of action for that violation.  The NJTCCA provides in relevant part that no seller shall:

> offer to any consumer . . . any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.

N.J. Stat. Ann. § 56:12-15.  The NJTCCA provides for a private right of action.  § 56:12-17.  The Court concluded that the NJTCCA can be violated if a contract or warranty contains a provision prohibited by state or federal law.  Thus, if the warranty in question contains a provision prohibited by the MMWA, Defendants may be held liable under the NJTCCA, even if Plaintiffs have not incurred actual damages.  [Docket Item 47 at 15 (citing <u>Barows v. Chase Manhattan Mortg. Corp.</u>, 465 F. Supp. 2d 347, 362 (D.N.J. 2006)).]

Third, the Court granted Plaintiff's motion for partial summary judgment and found that Plaintiff had demonstrated that the undisputed facts showed that the IBEX warranty violates the anti-tying provision of the MMWA.  Section 2302(c), one of the MMWA's provisions aimed at preventing anti-competitive warranty practices, proscribes warranties on consumer products which

5

"condition [the] written or implied warranty of such product on the consumer's using, in connection with such product, any article or service (other than [an] article or service provided without charge under the terms of the warranty) which is identified by brand, trade, or corporate name." § 2302(c).  The IBEX warranty requires that the credit for stolen vehicles be issued toward purchase of a vehicle at the dealership listed in the warranty, which is identified by brand.  The Court found that this violated § 2302(c) of the MMWA.

Finally, the Court granted Defendants' motion to dismiss Plaintiffs' claims brought pursuant to the consumer fraud acts of New Jersey and fifteen other states as well as Plaintiff's common law claim of rescission (Counts II, III, & V), but denied the motion to dismiss as to Plaintiff's unjust enrichment claim (Count IV).

As a result of this Court's June 29, 2009 Order, Plaintiffs amended their complaint to reflect the Court's ruling.  The First Amended Complaint maintains Plaintiffs' claims on the basis of common law unjust enrichment and the NJTCCA.  It also seeks declaratory judgment that the IBEX purchase contracts are void and unenforceable and a refund of money pursuant to that declaratory judgment.

Defendants now move for, among other things, reconsideration of that part of the June 29, 2009 Order granting Plaintiffs

6

partial summary judgement as to the technical violation of the MMWA and denying Defendants' motions to dismiss Counts IV and VI. Both the granting of the partial summary judgment and the denial of the motions to dismiss were based on the determination that the undisputed facts demonstrated that the IBEX warranty violated the anti-tying provision of the MMWA.  Because, as explained below, the Court finds that this determination was erroneous, Defendants' motion for reconsideration will be granted.


III.  DISCUSSION

   A. Standard of Review

   Local Civil Rule 7.1(i) governs the Court's review of Defendants' motion for reconsideration.  To prevail on a motion for reconsideration,  the movant must show:

> (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court . . . [rendered the judgment in question]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.

Max's Seafood Café ex rel. Lou-Ann, Inc., v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).

   Generally speaking, reconsideration under the third prong is appropriate only when "dispositive factual matters or controlling decisions of law were brought to the court's attention but not considered,"  P. Schoenfeld Asset Management LLC v. Cendant Corp., 161 F. Supp. 2d 349, 353 (D.N.J. 2001) (emphasis added).

7

However, where a provision of law has been overlooked, "the need
to correct a clear error of law . . . to prevent manifest
injustice" can override this consideration.  Max's Seafood Café
ex rel. Lou-Ann, Inc., v. Quinteros, 176 F.3d 669, 677 (3d Cir.
1999); see also Allyn Z. Lite, New Jersey Federal Practice Rules,
"Relaxation," 85-87 (2009).  This is because notwithstanding the
law of the case doctrine, "[a] court has the power to revisit
prior decisions of its own or of a coordinate court in any
circumstance, although as a rule courts should be loathe to do so
in the absence of extraordinary circumstances such as where the
initial decision was clearly erroneous and would work a manifest
injustice."  Christianson v. Colt Industries Operating Corp., 486
U.S. 800, 817 (1988).

    In the present motion, the movants present arguments arising
from two key statutory provisions, 15 U.S.C.§ 2302(a)(7) and §
2037, that were not previously argued or cited, and thus were not
specifically "overlooked" by the Court within the terms of L.
Civ. R. 7.1(i), supra.  Nonetheless, the omission of
consideration of these two important provisions led to an
incorrect determination which can and should be corrected under
the Court's inherent power to prevent manifest injustice by
correcting an error of law before a final judgment is entered, as
now explained.

## B.  Analysis

Defendants seek reconsideration of the Court's June 29, 2009 Order granting partial summary judgment to Plaintiff on the issue of the IBEX warranty's violation of the anti-tying provision, and denying Defendants' motions to dismiss on the same basis.  Among the reasons justifying reconsideration is a challenge to the Court's interpretation of the MMWA's anti-tying provision based in part on provisions of law not previously presented to the Court.  Although these statutory provisions are used in the movants' briefs merely to support arguments previously and properly rejected by this Court, the overlooked provisions of law convince the Court that its prior interpretation of the statute was erroneous in a way not identified by Defendants.

### 1.  The MMWA, FTC regulations, and this Court's previous interpretation of the anti-tying provision

The anti-tying provision of the MMWA proscribes warranties on consumer products that "condition [the] written or implied warranty of such product on the consumer's using, in connection with such product, any article or service (other than [an] article or service provided without charge under the terms of the warranty) which is identified by brand, trade, or corporate name."  § 2302(c).[3]

_____

[3]  The prohibition "may be waived by the Commission if (1) the warrantor satisfies the Commission that the warranted product

9

The paradigm example of a prohibited warranty is an auto warranty that is voided unless the consumer uses a particular brand of motor oil in the car (unless the warranty provides the motor oil without charge).  <u>See</u> H.R. Rep. 93-1107 (1974).  The only precedent interpreting the anti-tying provision is a case that involved this kind of straightforward application.  <u>See</u> <u>In re Apple & AT & TM Antitrust Litigation</u>, 596 F. Supp. 2d 1288 (N.D. Cal. 2008).

The question of first impression raised by the IBEX warranty is about the application of the anti-tying provision beyond the paradigm case — specifically, whether and to what extent the MMWA also forbids a warranty from designating a particular entity to provide the benefits under the warranty in such a way as to condition the benefits upon the consumer purchasing goods or services from the designated entity.  The Court's previous opinion determined that the anti-tying provision did apply to such a warranty, and that the IBEX warranty's designation of where the credit toward purchase may be redeemed therefore violated the anti-tying provision.

In addition to the statutory language of § 2302(c) recited above, the Court previously relied upon the Federal Trade

---

will function properly only if the article or service so identified is used in connection with the warranted product, and (2) the Commission finds that such a waiver is in the public interest."  § 2302(c).

Commission's ("FTC") interpretation of the anti-tying provision.

See 16 C.F.R. §§ 700.10.[4]  The regulation restates the statutory text and lists two examples of prohibited warranties:

> (b) Under a limited warranty that provides only for replacement of defective parts and no portion of labor charges, section 102(c) prohibits a condition that the consumer use only service (labor) identified by the warrantor to install the replacement parts.  A warrantor or his designated representative may not provide parts under the warranty in a manner which impedes or precludes the choice by the consumer of the person or business to perform necessary labor to install such parts.

> (c) No warrantor may condition the continued validity of a warranty on the use of only authorized repair service and/or authorized replacement parts for non-warranty service and maintenance.  For example, provisions such as, "This warranty is void if service is performed by anyone other than an authorized 'ABC' dealer and all replacement parts must be genuine 'ABC' parts," and the like, are prohibited where the service or parts are not covered by the warranty . . . .

16 C.F.R. §§ 700.10(b)-(c).[5]

The example discussed in § 700.10(c) is the paradigm example discussed above, in which the warranty is voided by failure to purchase a particular entity's goods or services entirely apart from the warranty's remedy.  Under Defendants' interpretation of

---

[4]  The FTC interpretation of section 2302(c) is not a formal administrative regulation, see Madison v. Resources for Human Development, Inc., 233 F.3d 175, 186 (3d Cir. 2000); rather, it "represent[s] the Commission's views on various aspects of the Act."  42 Fed. Reg. 36112-01 (July 13, 1977).

[5]  The opinion in the federal register states "[section 2302(c)] prohibits tying arrangements in warranties that effectively restrict the consumer's ability to choose among competing brands or services that can be used in conjunction with the warranted product."  42 Fed. Reg. 36114 (July 13, 1977).

the statute, this is the only kind of warranty condition that is prohibited by § 2302(c). The example also indicates that when the service is covered by the warranty, it is permissible for the warranty to designate who may perform the service.

The example offered in § 700.10(b) demonstrates that, at least in the FTC's opinion, the MMWA addresses those warranty provisions that involve limitations on how the warranty's remedy is carried out. In the example provided by § 700.10(b), even though the warrantor is providing free replacement parts to the consumer, the warrantor cannot designate where the consumer may go to have those parts installed when the installation service is not paid for by the warrantor. Section 700.10(b) therefore interprets the statute to prohibit some forms of designation of entities that will perform obligations related to, but not covered by, the warranty.

This Court's previous examination of this issue found the IBEX warranty to be prohibited for the same reasons as the warranty discussed in § 700.10(b). The Court reasoned that if a warrantor can determine where a partial credit toward repurchase may be redeemed, the warrantor can thereby require the consumer to purchase some particular service "in connection with" the product, according to the meaning given to that phrase by § 700.10(b), in order to receive the benefit of the warranty. [Docket Item 47, at 26.] The Court also distinguished the IBEX

12

warranty from one that would meet the exception discussed in example § 700.10(c) in which the warranty provides parts or services without charge and therefore may designate who provides those benefits.  The IBEX warranty requires the consumer to spend thousands of dollars to replace the car, and therefore does not provide the replacement goods without charge.  While the credit itself is provided without charge, the credit has no value unless the consumer makes the required purchase.

The critical premise in the Court's previous determination is that the MMWA prohibits any warranty provision that requires the consumer to purchase some product or service identified by "brand, trade, or corporate name" in order to gain the benefit of the warranty.  If that premise is true, then the Court's reasoning was both valid and correct.

The premise seems to follow from the plain language of § 2302(c).  The anti-tying provision speaks of an event (the provision of a warranty benefit) and a prohibited type of condition on that event (the use of some product or service in connection with the warranted item that is not provided without charge).  Any warranty that provides as its benefit a partial payment toward a particular brand of product or service, whether in the form of an absolute credit or a relative percentage payment, necessarily conditions the provision of the benefit in a way that is prohibited by a literal reading of the statute.  This

is because the warranty benefit does not accrue unless the consumer purchases the product or service that the warranty subsidizes.  Therefore, the plain reading of § 2302(c) in isolation is that no partial payment warranty may identify the service or product by "a brand, trade, or corporate name."  § 2302(c).

### 2.  Reconsideration of the key premise underlying the Court's interpretation of the MMWA

The Court's previous opinion overlooked two relevant provisions of the MMWA and did not adequately consider the reasoning in an FTC letter opinion.  The additional statutory context and full consideration of the FTC letter opinion requires reconsideration of the Court's view of the critical premise discussed above, that the MMWA prohibits every warranty provision that requires the consumer to purchase some product or service in order to gain the benefit of the warranty.[6]

The Court's previous opinion acknowledged that Defendants' interpretation of § 2302(c) was supported, at least in part, by a 2002 letter opinion from Donald S. Clark, Secretary of the FTC,

---

[6]  As the Court previously noted, agency interpretive guidelines such as this letter opinion and the guidelines embodied in 15 C.F.R. § 700.10, as opposed to formal regulations, are not binding, but are "'entitled to respect' under Skidmore v. Swift, 323 U.S. 134 (1944), but only to the extent they have the 'power to persuade.'"  As the interpretation issued contemporaneously with the statute, § 700.10 is entitled to greater deference.  See Madison, 233 F.3d at 187.

which states that a warranty may limit where a consumer can get a warranted service or purchase a replacement part when the warranty pays for a portion of the service or part.[7]

The Court focused its review of the letter opinion on a single sentence emphasized by Defendants.  The Secretary wrote, "In the Commission's view, performing the very service promised under the warranty is not 'using' a service 'in connection with' the warranted product."  The Court correctly rejected this reasoning because the Secretary's statement is either trivial or incorrect.  If one interprets the Secretary to mean that designating who may perform a service covered by the warranty is different from providing for what services must be used in connection with the product, then the Secretary is certainly correct.  But that point is irrelevant to the question of whether the warranty can designate who performs a partially-covered service.  The distinction between designating who may perform a service and designating a service that the consumer must pay for offers no insight into the essential conundrum presented by a partial warranty, in which a benefit of the warranty is

---

[7]  The letter discusses so-called "50/50" warranties, that provide for partial payment for services and parts for automobiles, but the letter also makes clear that it applies to any other percentage allocation in a partial payment warranty. Letter Opinion from Donald S. Clark, Secretary of the FTC, to Keith E. Whann, Esq. (Dec. 31, 2002) (the "Clark Letter Opinion"), <u>available</u> <u>at</u> http://www.ftc.gov/os/2003/01/niadaresponseletter.htm _

intrinsically related to some purchase a consumer must make.  If, on the other hand, the Secretary meant to express that no limitation on where a service is performed can violate the MMWA even if the service is just an incidental requirement of something the warrantor pays for (as in the case of parts requiring installation), then the Court correctly observed that this interpretation would permit a warrantor to restrict consumer choice by tying uncovered goods or services to covered ones in the exact way forbidden by § 700.10(b) and the statute.

While the Court correctly rejected that part of the Clark Letter's reasoning, the Court did not adequately assess the rest of the reasoning in the letter as it relates to the Court's prior interpretation of the statute.  Under the Court's previous interpretation of the statute, no warranty with a partial payment benefit could designate the entity to perform the service or offer the goods, meaning that the entirety of the Clark Letter's conclusion regarding 50/50 warranties would have to be rejected. To the extent the Clark Letter's broader rationale in support of its determination with regard to 50/50 warranties is correct, it undermines the Court's previous interpretation of the statute.

The letter speaks in terms of the responsibilities of the warrantor and the responsibilities of the consumer under the warranty.  It states, "A tie-in prohibition that preserves consumers' purchase options makes sense with respect to

non-warranted articles or services that are severable from the dealer's responsibilities under the warranty."  Clark Letter Opinion, at 1 (emphasis added).  The Secretary found that the portion of the product or service paid for by the consumer in a partial payment warranty cannot be severed from the part for which the warrantor is responsible, and therefore sharing the cost of a product or service provided under the warranty permits the warrantor to designate the product or service by "brand, trade, or corporate name."  Id.

This analysis of the anti-tying provision that examines the prerogatives of the warrantor and their severability from the prerogatives of the consumer is substantially bolstered by two provisions of the statute not previously presented to the Court. Section 2302(a)(7) acknowledges the propriety of identifying "any person or class of persons authorized to perform the obligations set forth in the warranty."  And perhaps more importantly, § 2307 provides, "Nothing in this chapter shall be construed to prevent any warrantor from designating representatives to perform duties under the written or implied warranty."  If 2302(c) were to be read to prevent a warrantor who provides a partial payment or credit toward parts or services from designating the provider of the parts or services, then 2302(c) would "prevent [the] warrantor from designating representatives to perform duties under the written or implied

17

warranty," a reading explicitly foreclosed by § 2307.

These provisions of the statute make it clear that the statute cannot be read as a blanket prohibition on any warranty provision that requires the consumer to purchase some product or service identified by "brand, trade, or corporate name" in order to gain the benefit of the warranty. Instead, the key to the determination of whether a warrantor may designate an entity to perform a service or offer a replacement item is the ability to sever the obligations and duties fulfilled by the warrantor, which can be performed by whomever the warrantor sees fit under § 2307, from any obligations imposed on the consumer in order to receive the benefit of the warranty, obligations that are otherwise a violation of § 2302(c). Under the circumstances in which control over who performs the obligations of the warranty cannot be severed from control over which products or services to which the partial payment is applied, then § 2307 trumps § 2302(c) and requires that the warrantor be able to designate entities by brand or corporate name.

### 3.  Application of the severability test to this case

The language of §2302(c) read in light of § 2307 requires the Court to determine whether a credit toward repurchase is severable. A warranty benefit is severable if the warrantor's prerogative to designate who performs its obligations under the

warranty is severable from the consumer's prerogative to choose what products or services to purchase for use in connection with the warranted product.  The example discussed in § 700.10(b) represents a case of severability.  The warrantor can choose who performs the installation service without affecting the consumer's ability to choose which producer of the parts to purchase from.  The example discussed in the Clark Letter, in which the warrantor pays for 50% of the parts and services, represents a case of non-severability because of the nature of the warrantor's financial interests:

> In the case of 50/50 warranties, the warranting dealer has a direct interest in providing the warranty service for which it is partly financially responsible.  Unlike the [example offered in § 700.10(b)], in a 50/50 warranty the warranted repair work is not, as a practical matter, severable into two parts: one that the warrantor can perform and another part that another auto repair shop could perform.  Nor can a warranted part be separated into a fractional part provided by the warrantor and another fractional part that the consumer can purchase elsewhere.  Rather than conditioning the warranty on the purchase of a separate product or service not covered by the warranty, a 50/50 warranty shares the cost of a single product or service.  Dealers who pay a proportion of repair costs need some control over the diagnosis of the repair needed and the quality of the repair.  Barring dealers from providing the repair under these types of warranties could impose hardships and costs on both consumers and dealers that do not appear warranted by the purpose or intent of the statute.

Clark Letter Opinion, at 1.

The Court's June 29, 2009 Opinion acknowledged this issue of severability in passing without recognizing the statutory basis

for the inquiry that puts it at the center of the dispute.  The Court's discussion of the issue merely noted that Defendants had suggested no financial interest on the part of the warrantor that would be impacted by the brand of the dealership at which the warranty credit is redeemed.

But whether analyzing Defendant's motion to dismiss or Plaintiff's motion for summary judgment, the burden would not be on Defendants to allege or adduce evidence of financial interest and non-severability.  When the statute is properly read, the severability of the warrantor's prerogative to designate who performs the obligations of the warranty from the consumer's prerogative of which goods or services to buy is part of Plaintiff's prima facie case for violation of the anti-tying provision.  For the motions to dismiss or for summary judgment, the question would be whether Plaintiff's complaint alleges severability or whether Plaintiff adduced evidence of severability, respectively.

On reconsideration of the issue, Plaintiff appears not to have alleged facts sufficient to prove such severability.  If anything, the allegations contained in the Complaint suggest a financial interest between the warrantor and the designated entity much like in the case of a 50/50 warranty.  A credit can be a relative measure of value if there is a financial relationship between the warrantor and the dealership, or if they

are the same entity.  When that situation exists, the actual value of the credit depends on where it is redeemed in much the same way that the cost of the service or parts shared under a 50/50 warranty depends on the provider of both.  This is because the cost of providing the credit may be offset by some profit made in the deal.[8]  The question in this case is whether the credit has an absolute value and is therefore severable because it does not matter to the warrantor where it is redeemed, or has a relative value like a 50/50 warranty because of the circumstances of the warrantor-dealership relationship.

The Court has thus held that the ultimate success of Plaintiffs' MMWA claim will depend upon severability:  Whether the warrantor's prerogative to determine who performs the obligation of the warranty can be severed from the consumer's prerogative to determine from whom to purchase any good or services used in connection with the product.  If they can be severed, then the warrantor cannot decide for the consumer what goods or services to purchase to give value to the warranty benefit.  If they cannot be severed, then the warrantor's prerogative will prevail even if an incidental consequence of that requires the consumer to purchase some particular product or

---

[8]  As the Clark Letter Opinion notes, there may be an incentive for the dealership to inflate its prices under these circumstances.  But if so, this would not present a violation of the anti-tying provision, but instead some other provisions of law.  Clark Letter Opinion, at 2 n.8.

service to reap the benefits of the warranty.

It is a question not answered by the factual allegations in the Complaint or the motion practice.  It depends on the precise nature of the financial relationship between the entities, a fact not discussed in the Complaint or the evidence adduced on summary judgment.  The granting of partial summary judgment to Plaintiff was therefore improper, and Defendants' motion to dismiss should have been granted instead for failure to state a claim under the MMWA.

### 4.  Result of the Error

Because the Court has now determined that Plaintiff did not adduce evidence showing that Defendants violated the anti-tying provision of the MMWA, the Court will vacate that part of the June 29, 2009 order granting partial summary judgment and denying the motions to dismiss as to Counts IV and VI.  As Plaintiffs have amended the Complaint in the intervening period, Defendants' original motions to dismiss are moot even though the order denying them will be vacated.  However, Defendants reiterate the arguments regarding the interpretation of the MMWA in their new motions with respect to the Amended Complaint.  This part of their new motions will be granted without prejudice to Plaintiff moving to amend the First Amended Complaint to state a claim consistent with this Opinion within fourteen days.  Such

opportunity for amendment should be granted except when it appears to be futile.  See Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  While it does appear unlikely that severability exists in this case from the facts in the Complaint, the Court is not convinced that amendment would be futile.

Because it appears that Defendants' remaining motions may be mooted or otherwise affected by the Court's granting of Defendants' motion for reconsideration which results in dismissal of the Complaint, the Court will dismiss those motions without prejudice to Defendants renewing them at such time as the Court may grant Plaintiff's motion to amend the First Amended Complaint.

The one exception to this dismissal of Defendants motions is Defendant IAS's motion for retroactive permission to file a reply brief that was already filed.  [Docket Item 61].  Local Rule 7.1(d)(3) provides that reply briefs are not to be filed on a motion to reconsider without the Court's permission.  IAS filed such a brief without permission.  Nevertheless, the Court will exercise its discretion to grant permission nunc pro tunc, because it appears that the failure to seek permission was an oversight, and given the complexity and novelty of the case, would likely have granted the reply if it had been timely requested.

## VI.   CONCLUSION

The Court's June 29, 2009 grant of partial summary judgment in favor of Plaintiffs was clearly erroneous because Plaintiffs did not allege or adduce facts sufficient to demonstrate a violation of the anti-tying provision of the MMWA.  The Court overlooked provisions of the statute in § 2302(a)(7) and in § 2307 (which were not previously argued to the Court) providing that the statute cannot be interpreted to limit who may fulfill warranty obligations.  This additional statutory context changes the Court's interpretation of the statute's application to warranties involving credits toward repurchase.  Because of the clear error of law, the Court will vacate its decision granting partial summary judgment to Plaintiffs.  The Court will dismiss the Complaint without prejudice to Plaintiffs filing a motion to amend the First Amended Complaint consistent with this Opinion within fourteen days.  The remaining portion of Defendants' new motions will be dismissed without prejudice to renewal if Plaintiffs are granted leave to file a Second Amended Complaint, consistent with this Opinion.


**March 29, 2010**                    **  s/ Jerome B. Simandle    **
Date                                  JEROME B. SIMANDLE
                                      United States District Judge