IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

<table>
<tr><td>SHARON McGARVEY, et al.,</td><td>:</td><td>HON. JEROME B. SIMANDLE</td></tr>
<tr><td>Plaintiffs,</td><td>:</td><td>Civil No. 08-5610 (JBS/AMD)</td></tr>
<tr><td>v.</td><td>:</td><td></td></tr>
<tr><td>PENSKE AUTOMOTIVE GROUP, INC., et al.,</td><td>:</td><td><strong><u>OPINION</u></strong></td></tr>
<tr><td>Defendants.</td><td>:</td><td></td></tr>
</table>

APPEARANCES:

Simon B. Paris, Esq.
Patrick Howard, Esq.
SALTZ, MONGELUZZI, BARRETT & BENDESKY, PC
One Liberty Place
1650 Market Street
52nd Floor
Philadelphia, PA 19103
    Attorneys for Plaintiffs

Daniel Elliot Brewer, Esq.
Mary E. Kohart, Esq.
DRINKER BIDDLE & REATH
105 College Road East
Suite 300
Princeton, NJ 08542-0627
    Attorneys for Defendants Penske Automotive Group, Inc.;
    United Autocare Products, Inc.; and United Autocare, Inc.

Keith D. Heinold, Esq.
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, PC
1845 Walnut Street
18th Floor
Philadelphia, PA 19103-4797
    -and-
Kevin M. McKeon, Esq.
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, PC
Woodland Falls Corporate Park
200 Lake Drive East
Suite 300
Cherry Hill, NJ 08002
    -and-

Paul K. Leary, Jr., Esq.
COZEN O'CONNOR
457 Haddonfield Road
Suite 300
P.O. Box 5459
Cherry Hill, NJ 08002
      Attorneys for Defendant Innovative Aftermarket Systems, L.P.


**SIMANDLE**, District Judge:

## I.  INTRODUCTION

    This putative class action involves warranties alleged to
be prohibited by the Magnuson Moss Warranty Act ("MMWA"), 15
U.S.C. § 2302.  This Court previously granted Defendants' motion
to dismiss the First Amended Complaint because it did not allege
sufficient facts to show that the warranty in question violated
the MMWA, but permitting Plaintiffs the opportunity to move for
an amendment to cure the defect.  The case is now before the
Court upon Plaintiffs' motion to file a Second Amended Complaint,
which attempts to add allegations necessary to show that the
warranty is prohibited by the MMWA [Docket Item 99].  Defendants
Penske Automotive Group, Inc. ("PAG") and United Autocare
Products, Inc. and United Autocare, Inc. ("UAP") argue that the
amendment is futile [Docket Item 100], and Defendant Innovative
Aftermarket Systems ("IAS") agrees for similar reasons [Docket
Item 101].

    Because the MMWA does not provide Plaintiffs with a private
right of action, they are suing under New Jersey's Truth-In-
Consumer Contract, Warranty and Notice Act ("NJTCCA"), N.J. Stat.

Ann. § 56:12-15; they also seek declaratory judgment that the warranty is void and restitution under a theory of unjust enrichment.  The principal issues to be decided by the Court are: first, whether the proposed Second Amended Complaint alleges facts sufficient to show that the Defendants violated a "clearly established" legal right under the NJTCCA; and second, whether, if the warranty is prohibited by the MMWA, the warranty is void or voidable, entitling Plaintiffs to declaratory judgment and the return of their consideration under a theory of unjust enrichment.  For the reasons explained below, the Court finds that the consumer right at issue here is not "clearly established," and that the warranty is not voidable even if it is prohibited under the MMWA.  Therefore, the Court will deny the motion to amend as futile.


**II.  BACKGROUND**

As explained in this Court's previous two opinions in this matter, this case involves a limited warranty issued with the IBEX Anti-Theft Etch System, a product designed to deter automobile theft.  McGarvey v. Penske Automotive Group, Inc. ("McGarvey I"), 639 F. Supp. 2d 450, 457 (D.N.J. 2009); McGarvey v. Penske Automotive Group, Inc. ("McGarvey II"), Civil No. 08-5610 (JBS/AMD), 2010 WL 1379967 (D.N.J. March 29, 2010); (Second Am. Compl. ¶¶ 1-2).  The IBEX system is manufactured by

IAS, distributed to dealerships by UAP, and sold by automobile

dealerships owned by PAG.  (Id. ¶ 2.)  The warranty provides in

relevant part:

> [If the vehicle is stolen] we will provide the
> customer with a replacement vehicle, by
> issuing at the dealership listed in this
> Warranty, a credit in the name of the Customer
> (up to _____ $2,500 or _____ $5,000 or _____
> $7,500 check one) to be applied towards the
> purchase of the replacement vehicle.

(Second Am. Compl. ¶ 43)  Plaintiffs argue that the terms of the

warranty constitute an unlawful product tying arrangement that is

prohibited by the MMWA because it requires the purchase of a

replacement vehicle from a particular dealership in order to

confer any benefit, and that even though their vehicles were not

stolen, merely having been a party to such a warranty is

sufficient for relief.  (Id. ¶ 4.)

In McGarvey I, this Court determined that Plaintiffs could

not state an independent claim under the MMWA, because they did

not meet the requirements for that statute's private right of

action.  McGarvey I, 639 F. Supp. 2d at 457.  The Court ruled,

however, that Plaintiffs may have a cause of action under the

NJTCCA based on the MMWA's anti-tying provision, even in

circumstances in which the MMWA does not itself provide an

independent federal cause of action.  Id. at 458.  The NJTCCA

provides a cause of action when a defendant offers "any written

consumer warranty . . . which includes any provision that

4

violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made."  N.J. Stat. Ann. § 56:12-15.  Thus, the Court held that Plaintiffs' NJTCCA claim could proceed if they could show that the warranty violated a right clearly established by the MMWA, even if the MMWA required additional conditions be met in order to have a private right of action for that violation.  McGarvey I, 639 F. Supp. 2d at 464.

In McGarvey I, the Court also found that the IBEX warranty was prohibited by the MMWA.  Id. at 463.  The anti-tying provision of the MMWA proscribes warranties on consumer products that condition the warranty "on the consumer's using, in connection with such product, any article or service (other than [an] article or service provided without charge under the terms of the warranty) which is identified by brand, trade, or corporate name."  § 2302(c).  The IBEX warranty requires that in order to receive the credit for replacement of the stolen vehicles, the consumer must purchase a vehicle at the named dealership listed in the warranty.  The Court found that this tying of the benefit of the warranty to a purchase made at a particular dealership violated § 2302(c) of the MMWA.  McGarvey I, 639 F. Supp. 2d at 463.

After McGarvey I, Plaintiffs amended their complaint to

reflect the Court's ruling.  [Docket Item 51.]  The First Amended Complaint maintains Plaintiffs' claims on the basis of common law unjust enrichment and the NJTCCA and adds a claim for declaratory judgment that the IBEX warranties are void and unenforceable.

On reconsideration of McGarvey I, the Court found that it had not taken into account other MMWA provisions which affect the interpretation of the anti-tying provision.  McGarvey II, 2010 WL 1379967, at *9.  As explained in McGarvey II, additional provisions of the MMWA make it clear that the statute cannot be read as a blanket prohibition on any warranty provision that requires the consumer to purchase some product or service identified by "brand, trade, or corporate name" in order to gain the benefit of the warranty.  Id. at *7.  The Court found that the statute requires an assessment of whether a credit toward repurchase is "severable," in the sense the term was used by the Commissioner of the Federal Trade Commission in an early opinion interpreting the statute.  Id.

As explained in McGarvey II, a warranty's benefit is severable if the warrantor's prerogative to designate who performs its obligations under the warranty is severable from the consumer's prerogative to choose what products or services to purchase for use in connection with the warranted product.  Id. For example, a warrantor can choose who performs the installation of a replacement part without affecting the consumer's ability to

6

choose which producer of the parts to purchase from.  In such a case, the prerogatives are severable, and the warrantor may choose the servicer, but not the brand of repair parts.  Choosing the brand of replacement parts would violate the anti-tying provision.  An example of where they are not severable is where the warrantor pays for half of the parts and services, because the warrantor has a direct financial interest in both which parts are purchased and who performs the service.  The Court found that it erred in not requiring Plaintiffs to allege facts showing that the prerogatives of the warrantor and consumer in this case are severable.  Id. at *8.

In response to McGarvey II, Plaintiffs seek leave to file a Second Amended Complaint containing allegations showing that the prerogatives of the warrantor and consumer in this case are severable (Second Am. Compl. ¶¶ 52-57).  Defendants oppose the amendment, arguing that it is futile in several respects.  Among other things, Defendants argue that because the Court's interpretation of the MMWA's anti-tying provision was based on a question of first impression about the scope of that provision, they cannot be said to have violated a "clearly established" consumer right under the NJTCCA.  Defendants also maintain that the MMWA's explicit remedies and limited private right of action foreclose Plaintiffs' remedies which are based on finding the warranty to be void because of the anti-tying provision.  For the

reasons the follow, the Court agrees with Defendants and will deny the motion to file the Second Amended Complaint.

## III.  DISCUSSION

### A. Standard of Review

Rule 15(a)(2) provides that leave to amend should be freely given when justice so requires.  Fed. R. Civ. P.  The decision to permit amendment is discretionary.  <u>Toll Bros., Inc. v. Township of Readington</u>, 555 F.3d 131, 144 n. 10 (3d Cir. 2009).  Among the legitimate reasons to deny a motion is that the amendment would be futile.  <u>Lorenz v. CSX Corp.</u>, 1 F.3d 1406, 1414 (3d Cir. 1993) (citation omitted).  Futility is determined by the standard of legal sufficiency set forth in Rule 12(b)(6), Fed. R. Civ. P.  <u>In re Burlington Coat Factory Litigation</u>, 114 F.3d 1410, 1434 (3d Cir. 1997).  Accordingly, an amendment is futile where the complaint, as amended, would fail to state a claim upon which relief could be granted.  <u>Id.</u>

A complaint sufficiently states a claim when it alleges facts about the conduct of each defendant giving rise to liability.  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  These factual allegations must present a plausible basis for relief (i.e. something more than the mere possibility of legal misconduct).  <u>See Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1951 (2009).  In assessing the complaint, the Court must "accept all factual allegations as true and construe the complaint in the

light most favorable to the plaintiff." Phillips v. County of
Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v.
Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

### B.   "Clearly Established Right" under the NJTCCA

The NJTCCA forbids businesses from offering a written
consumer warranty "which includes any provision that violates any
clearly established legal right of a consumer . . . as
established by State or Federal law at the time the offer is made
or the consumer contract is signed or the warranty, notice or
sign is given or displayed." N.J. Stat. Ann. § 56:12-15.[1]  A
threshold question for Plaintiffs' NJTCCA claim is whether the
MMWA's prohibition of the kind of warranty in this case was
"clearly established" at the time the warranty was issued.

---

[1]   The text reads in full:
> No seller, lessor, creditor, lender or bailee
> shall in the course of his business offer to
> any consumer or prospective consumer or enter
> into any written consumer contract or give or
> display any written consumer warranty, notice
> or sign after the effective date of this act
> which includes any provision that violates any
> clearly established legal right of a consumer
> or responsibility of a seller, lessor,
> creditor, lender or bailee as established by
> State or Federal law at the time the offer is
> made or the consumer contract is signed or the
> warranty, notice or sign is given or
> displayed. Consumer means any individual who
> buys, leases, borrows, or bails any money,
> property or service which is primarily for
> personal, family or household purposes.

N.J. Stat. Ann. § 56:12-15.

There is little legal authority addressing what is meant by "clearly established," as the term is used in the NJTCCA.  The statute itself does not define the term, and no state or federal case has directly addressed the question.

As discussed at length in the Court's previous opinions, the MMWA does not unambiguously apply to the situation at issue here.  The meaning of the anti-tying provision depends on definitions of terms such as "in connection with," which are not provided in the statute.  § 2302(c).  In particular, the statute fails to specify whether "using in connection with," applies to parts or services that the consumer must pay for in order to receive the warranty's benefit, as in the case where a warranty pays for replacement parts but not the repair service.  The Court's interpretation of the statute heavily relied on the FTC's informal and nonbinding opinion about its scope, especially 16 C.F.R. § 700.10(b).[2]

Unfortunately, what little precedent there is defining the term "clearly established" offers no guidance as to how that

---

[2]   The regulation reads: "Under a limited warranty that provides only for replacement of defective parts and no portion of labor charges, [the anti-tying provision] prohibits a condition that the consumer use only service (labor) identified by the warrantor to install the replacement parts.  A warrantor or his designated representative may not provide parts under the warranty in a manner which impedes or precludes the choice by the consumer of the person or business to perform necessary labor to install such parts."  16 C.F.R. § 700.10(b).

phrase is to be applied to a statute that is facially ambiguous.[3]
Plaintiffs' argument is that if the source of the consumer right
is a statute, then it is clearly established, regardless of how
ambiguous the statute is.  This is not a plausible reading of the
NJTCCA.  Such an interpretation would essentially read out
"clearly established" from the statute entirely, so that its
meaning would be unchanged if it were written "violates any legal
right of a consumer . . . as established by State or Federal law
at the time the offer is made."  In interpreting what the New
Jersey legislature meant by this phrase, the Court must endeavor
to give each word in the statute some meaning.  <u>See, e.g.</u>,
<u>Carcieri v. Salazar</u>, 129 S. Ct. 1058, 1071 (2009) (Souter, J.,
concurring in part and dissenting in part) ("[G]iving each phrase
its own meaning would be consistent with established principles
of statutory interpretation.").  The distinction between

---

[3]   The most relevant case offered by Plaintiffs addresses an
unambiguous right created by statute.  <u>See</u> <u>Mullin v. Automobile
Protection Corp.</u>, Civil No. 07-3327 (RBK), 2008 WL 4509612, *4-5
(D.N.J. September 29, 2008) (citing N.J. Stat. Ann. § 56:8-19).
The two other cases do not discuss what "clearly established"
means or implicitly interpret the phrase.  <u>See</u> <u>Bosland v. Warnock
Dodge, Inc.</u>, 933 A.2d 942, 949 (N.J. Super. Ct. App. Div. 2007);
<u>Barows v. Chase Manhattan Mortg. Corp.</u>, 465 F.Supp.2d 347 (D.N.J.
2006).  If the statute in this case was express and unambiguous
in the creation of the right in question, then the Court would
agree with Plaintiffs that the right would be clearly
established.  As Plaintiffs correctly observe, the fact that the
scope of the anti-tying provision was a matter of first
impression is not, in itself, the dispositive inquiry.  A
question can have an obvious answer even if it has never been
asked.

violating a legal right and violating a clearly established legal right must lie in the how apparent the existence of the right is to the parties.  An ambiguous statute no more clearly establishes a legal right than does a single thread of disputed precedent.

Defendants urge the importation of the standard for what is clearly established from the doctrine of qualified immunity for government officials.  See Curley v. Klem, 499 F.3d 199, 206-07 (3d Cir. 2007) (explaining scope of what is considered clearly established in context of qualified immunity).  Under that doctrine, the assessment of what is clearly established is somewhat fact-specific, requiring that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. at 207 (internal quotations and citations omitted).  Defendants' position gives some meaning to the phrase, suggesting that the New Jersey legislature intended to impose NJTCCA liability only upon those vendors whose violation of a consumer statute was so clear that no reasonable vendor could fail to know that its conduct was prohibited.  And Defendants also point to some legislative history, a statement in support of the NJTCCA's passage, that is consistent with Defendants' position that the requirement that the right be clearly established is meant to limit the scope of protection to those rights about which there is no reasonable disagreement.  See Statement, Bill No. A1660, 1981 N.J. Laws, Chapter 454, Assembly

No. 1660, page 2 (PAG's Ex. A) (identifying well-settled rights as examples of clearly established rights).  Even if less is required to make a right clearly established under the NJTCCA than in the context of qualified immunity from constitutional tort liability, to give the phrase any meaning at all requires that the right in question must have a more established basis than its mere post hoc recognition of a right in a district court, which is all that is present here.

At the time the warranties were made, there was no unambiguous statutory text, helpful legislative history, relevant precedent, or determinative regulatory interpretations.  There was a nonbinding regulation that addressed only one of the questions about the scope of the anti-tying provision.  In other words, there was no established standard putting Defendant on notice that its conduct was prohibited.  Whatever the NJTCCA means by "clearly established," it cannot apply to the right in question here.  Therefore, the Court finds that the right being invoked in this case was not clearly established by the MMWA at the time these warranties were offered, and therefore Plaintiffs cannot state a claim under the NJTCCA for the violation of this right.

**C.  Validity of the Warranty and Restitution Damages**

1.  Standing

In addition to their statutory claim under the NJTCCA,

13

Plaintiffs seek to have their warranties voided and the
consideration they paid for them returned.  The factual and legal
bases for these requests for relief are clear:  Plaintiffs allege
that the IBEX warranty is void under the common law of contracts
because the restrictions on use of the replacement credit violate
the anti-tying provision of the MMWA, and Plaintiffs are
therefore entitled to the return of that portion of the
consideration paid for the warranty.  Both New Jersey and federal
law provide this relief to consumers who can show that a contract
they entered into is prohibited by a statute designed to protect
them, and that voiding the contract or part of it is consistent
with the purpose of the statute.  See, e.g., Wessel v. City of
Albuquerque, 463 F.3d 1138, 1146-47 (10th Cir. 2006); Marx v.
Jaffe, 222 A.2d 519, 521 (N.J. Super. Ct. App. Div. 1966);
Sammarone v. Bovino, 928 A.2d 140, 145-46 (N.J. Super. Ct. App.
Div. 2007).  Unfortunately, though it is clear what must be
determined by this Court in order to assess whether Plaintiffs
are entitled to the relief they seek, there has been much
confusion over what to call the legal cause of action according
to which this relief is sought.  This confusion has led
Defendants to challenge, among other things, Plaintiffs' standing
to bring this claim.

In the original Complaint, Plaintiffs pleaded separate
causes of action for unjust enrichment and rescission.  The Court

14

dismissed rescission as a cause of action because rescission is not a cause of action at law, but is rather an equitable remedy available to a Court when a party has shown that it is entitled to such relief and no remedy at law is available. McGarvey I, 639 F. Supp. 2d at 466; see Hilton Hotels Corp. v. Piper Co., 519 A.2d 368, 372-73 (N.J. Super. Ct. Ch. Div. 1986); See Canfield v. Reynolds, 631 F.2d 169, 178 (2d Cir. 1980); Hoke, Inc. v. Cullinet Software, Inc., No. 89-1319, 1992 WL 106784, at *2 (D.N.J. Apr. 28, 1992) ("[R]escission refers to a remedy, not a cause of action."). The Court permitted Plaintiffs to seek this relief under their unjust enrichment count, on the theory that if the warranties were proven to be illegal, the contracts could be voided, and it may be unjust enrichment to permit Defendants to retain Plaintiffs' consideration in such a circumstance. McGarvey I, 639 F. Supp. 2d at 466.

In the Second Amended Complaint, Plaintiffs added a count for declaratory judgment finding the contract void, presumably because Plaintiffs saw this as a necessary step for a cause of action based on unjust enrichment. That is how the Court now finds itself asked to determine whether Plaintiffs have standing to seek declaratory judgment, as if it were disembodied from the effort to obtain restitution damages. It is also how the Court is in the position of determining whether the claim for unjust enrichment is futile because it ordinarily requires a "failure of

remuneration" that "enriched defendant beyond its contractual
rights," VRG Corp. v. GKN Realty Corp., 641 A.2d 519, 526 (N.J.
1994).

It may be that neither declaratory judgment nor unjust
enrichment are the right names for a claim seeking to void a
contract as against public policy and to recover restitution.
But if so, Plaintiffs' error is one of nomenclature, not of law.
As explained above, both New Jersey and federal law are clear
that in certain circumstances a party is entitled to return of
the consideration paid for a contract following a declaration
that the contract is unenforceable because of conflict with a
statute.  The Second Amended Complaint is more than sufficient to
put Defendants on notice that this is Plaintiffs' claim.

However the claims seeking this relief are characterized, as
an action to void the contract and recover for unjust enrichment
or otherwise, they are an effort to obtain restitution by a party
to a contract that is unenforceable because it conflicts with
public policy.  Plaintiffs have standing to seek this relief.
The injury from which Plaintiffs seek redress is the loss of
their payment for a warranty that allegedly violates public
policy.  There is no concern that the declaratory judgment would
be an advisory opinion, because the determination that the
contract is void is actually just an underlying determination
that the Court must make in order to resolve the controversy over

16

whether Plaintiffs are entitled to restitution damages.[4]

## 2.  Merits

That a contract contains terms that contradict some statute
does not necessarily mean the contract is unenforceable, nor does
it necessarily entitle any party to be returned to its pre-
contract position.  Instead, when a provision of a contract
violates a federal statute, the language and purpose of the
statute itself determine the legal consequences.  Sola Electric
Co. v. Jefferson Electric Co., 317 U.S. 173, 176-77 (1942).  See
Kelly v. Kosuga, 358 U.S. 516, 519 (1959) ("The Court observed
that the Sherman Act's express remedies could not be added to
judicially by including the avoidance of private contracts as a
sanction."); Roadmaster (USA) Corp. v. Calmodal Freight Systems,
Inc., 153 Fed. App'x 827, 830 (3d Cir. 2005); Rothberg v.
Rosenbloom, 808 F.2d 252, 254 n.2 (3d Cir. 1986); Northern
Indiana Public Service Co. v. Carbon County Coal Co., 799 F.2d
265, 273 (7th Cir. 1986) ("When the statute is federal, federal
law determines . . . the effect of the violation on the
enforceability of the contract.").  This is because "[w]hen a

---

[4]  Depending on the nature of the contractual relations
between all the parties, it may or may not be the case that the
parties with no executory obligations under the warranty
agreement are necessary parties to an action to void that
warranty.  Since, as explained below, the Court finds that the
effort to void the warranty is futile, the Court need not reach
the question of who the proper parties to such an effort are.

federal statute condemns an act as unlawful the extent and nature of the legal consequences of the condemnation, though left by the statute to judicial determination, are nevertheless federal questions, the answers to which are to be derived from the statute and the federal policy which it has adopted." Sola Electric Co., 317 U.S. at 176.  Thus, the determination of the legal consequences becomes a question of the language and intent of the MMWA, because the putative invalidity of the warranty contract in this case is based on its conflict with the anti-tying provision of the MMWA.

The Third Circuit Court of Appeals has stated that § 178 of the Restatement (Second) of Contracts is an accurate reflection of the law on whether to enforce contracts as contrary to public policy.  See Shadis v. Beal, 685 F.2d 824, 832 n.15 (3d Cir. 1982).  The Restatement provides for a balancing of interests in which a term is unenforceable if "the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms."  Restatement (Second) of Contracts § 178 (1981).  Several factors generally favor enforcement (i.e. freedom of contract) and there may be a special public interest in the enforcement of particular terms.  Id. Against these factors, courts generally assess (1) the strength of the policy with which the contract term conflicts (i.e. criminal prohibition vs. minor regulatory detail); (2) whether

18

and to what extent refusal to enforce the term furthers that policy; and (3) misconduct of the parties.  Id.[5]

There is no special public interest favoring enforcement of this consumer warranty, nor misconduct alleged in this case, so the Court must determine whether the general interest in enforcement is clearly outweighed by the strength of the policy with which the contract term conflicts and the extent that refusal to enforce the term furthers that policy.

Congress sought to achieve multiple purposes with the enactment of the MMWA, including protecting consumers from deception, making warranties easier for consumers to enforce, and improving competition in the marketing of consumer products.  15 U.S.C. § 2302(a); H.R. Rep. No. 93-1107 (1974); S.Rep. No. 93-1408 (1974).  The anti-tying provision embodies several of these purposes by both removing conditions on warranties to make them more easily enforced by consumers, and improving competition by improving consumer choice, as in the case of the ability to select a brand of replacement parts.

Although refusal to enforce a warranty with a prohibited tie

---

[5]  The Restatement also accurately captures the rule for restitution when "the claimant is regarded as being less in the wrong because the public policy is intended to protect persons of the class to which he belongs and, as a member of that protected class, he is regarded as less culpable."  Restatement (Second) of Contracts § 198 (1981); see Wessel, 463 F.3d at 1146-47.  But the question of whether the statute is intended to protect the claimant is not reached until it is determined that the contract term should not be enforced.

would discourage warrantors from drafting them, the text and structure of the MMWA make clear that Congress determined that the interests served by the statute were not furthered by voiding all warranties prohibited by the anti-tying clause.  The MMWA does not consider a party to have been injured merely by agreeing to a warranty with a tying provision, and only provides for redress when some additional injury has occurred as a result of a violation of the MMWA.  The statute provides for a right of action for consumers to seek legal and equitable relief if they have been "damaged by the failure of a . . . warrantor . . . to comply with any obligation under [the MMWA], or under a written warranty."  15 U.S.C. § 2310(d)(1).  Conversely, the statute permits the FTC to act on behalf of the consumer even when injury has not resulted by providing that "[i]t shall be a violation of section 45(a)(1) of this title [unfair competition] for any person to fail to comply with any requirement imposed on such person by this chapter (or a rule thereunder) or to violate any prohibition contained in this chapter (or a rule thereunder)." § 2310(b).  Thus, while the FTC is given the power to bring enforcement actions pursuant to 15 U.S.C. § 45 upon a mere failure to comply with the MMWA, the consumer who is a party to the prohibited agreement is only empowered to bring an action when damaged.

     That the statute does not intend to void warranties

prohibited by the anti-tying provision is further bolstered by the fact that the MMWA provides that no legal action can be brought under its private right of action until the warrantor is given the opportunity to cure the violation.  15 U.S.C. § 2310(e).  This is consistent with the statute's statement of a "policy to encourage warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms."  15 U.S.C. § 2310(a).

The clearest indication that the purpose of the MMWA is not furthered by voiding warranties prohibited by the anti-tying provision is that where Congress did think that voiding contractual terms served the purposes of the MMWA, it did so explicitly.  Congress did so in § 2308(c), which states that "a disclaimer, modification, or limitation made in violation of this section shall be ineffective for purposes of this chapter and State law."  § 2308(c).  The statute's purpose is the regulation of certain contractual agreements, so the drafters of the statute knew that there would always have been an underlying contract whenever a provision of the statute is violated.  That Congress expressly included this remedy for § 2308(c), but did not include it for the anti-tying provision, strongly suggests that nonenforcement was not the intended consequence of the anti-tying provision.  See, e.g., Abdullah v. American Airlines, Inc., 181 F.3d 363, 372 (3d Cir. 1999) (applying and explaining this "to

21

express one is to exclude the other" rule of statutory
interpretation).

In sum, it does not further the policy enacted in the MMWA —
which includes careful statements about when consumers have a
right of action, when the FTC is empowered to act, and what kinds
of terms are unenforceable — to permit a party to a warranty with
a prohibited tie to simply void the contract and recoup its
consideration by reference to the statute without regard to the
statute's limited remedies.  Consequently, the Court finds that
the warranty remains enforceable, and the claims for declaratory
judgment and unjust enrichment are futile.

## VI.  CONCLUSION

This Court's interpretation of the MMWA's inscrutable anti-
tying provision is not clearly established.  It therefore cannot
form the basis for an action under the NJTCCA.  And without a
viable claim that the warranty violates the NJTCCA, Plaintiffs'
effort to void the warranty is futile because, unlike the
somewhat ambiguous anti-tying provision, the rest of the MMWA is
clear that its purpose is not to allow consumers to void their
private contracts without some additional proof of injury.

Although the denial of a motion to amend would ordinarily
mean the parties would proceed to litigate the existing version
of the Complaint, in this case today's Opinion also necessarily

finds that claims contained in that complaint fail to state a claim upon which relief may be granted.  Therefore, the motion to file the Second Amended Complaint will be denied and the First Amended Complaint will be dismissed.  The accompanying Order will be entered.


**March 31, 2011**                           **_s/ Jerome B. Simandle_**
Date                                         JEROME B. SIMANDLE
                                             United States District Judge